(No. 20911.—

W. E. KENNEDY *et al.* Appellants, *vs.* THE CITY OF EVANSTON, Appellee.

*Opinion filed April 23, 1932—Rehearing denied June 8, 1932.*

F. F. & J. V. Norcross, (J. V. Norcross, and James Hibben, of counsel,) for appellants.

William Lister, Corporation Counsel, (Heth, Lister & Collins, of counsel,) for appellee.

Mr. Commissioner Partlow reported this opinion:

Appellants, who are residents of the city of Evanston, Illinois, filed their bill in the superior court of Cook county against appellee, the city of Evanston, praying that two amendments to the zoning ordinance of the city be declared void and that their enforcement be restrained. Upon issue being joined the cause was referred to a master to take the evidence and report his conclusions of law and fact. The master found that the city had authority to enact the ordinances; that the ordinances were not unreasonable or oppressive; that the judgment of the city council as expressed in the ordinances could not be questioned by the court and that the court could not interfere with the enforcement of the ordinances; that appellants had failed to prove the material allegations of their bill, and that the bill

should be dismissed for want of equity. Exceptions to the report were overruled, the bill was dismissed for want of equity and an appeal was prosecuted to this court upon the grounds that the validity of a municipal ordinance was involved and that the public interest required a direct appeal to this court.

Several grounds of reversal are urged, but most of them can be considered under the contention of appellants that the two amendments to the zoning ordinance are invalid under the law and the evidence, and that the change in the district in question was not made because the public welfare demanded it but was made because certain parties wanted it made.

Zoning laws are based upon the police power of the State to enact laws for the safety, health, morals and general welfare of the people. The legislature cannot, under the guise of protecting the interest of the people, arbitrarily interfere with private rights. The legislative determination as to what is a proper exercise of the police power is not conclusive but it is subject to review by the courts. (*City of Chicago* v. *Chicago and Northwestern Railway Co.* 275 Ill. 30; *Koy* v. *City of Chicago,* 263 id. 122.) If the means employed have no real, substantial relation to public objects within the power of the State, or if these means are arbitrary and unreasonable, courts will disregard mere forms and interfere for the protection of the rights injuriously affected by such illegal action. (*People* v. *Robertson,* 302 Ill. 422; *Condon* v. *Village of Forest Park,* 278 id. 218.) An act which deprives a citizen of his liberty or property cannot be sustained under the police power unless due regard for the public welfare, health, comfort and safety requires it. (*People* v. *Village of Oak Park,* 331 Ill. 406.) The owner of property has a constitutional right to make any use of it he desires, so long as he does not endanger or threaten the safety, health, comfort or general welfare of the people. (*City of Chicago* v. *Wells,* 236 Ill. 129;

*McCray* v. *City of Chicago,* 292 id. 60; *People* v. *City of Chicago,* 280 id. 576; *City of Aurora* v. *Burns,* 319 id. 84.) If a general zoning ordinance is passed and persons buy property in a certain district they have a right to rely upon the rule of law that the classification made in the general ordinance will not be changed unless the change is required for the public good. (*Western Theological Seminary* v. *City of Evanston,* 325 Ill. 511; *Phipps* v. *City of Chicago,* 339 id. 315.) Where the amendment of a zoning ordinance is clearly an arbitrary and unreasonable action on the part of the city council and not authorized or contemplated by the zoning statute it is of no force and effect. *Michigan-Lake Building Corp.* v. *Hamilton,* 340 Ill. 284; *Brown* v. *Board of Appeals,* 327 id. 644.

The evidence shows that the territory or district in question is in the southeastern part of the city of Evanston. It is bounded on the south by South boulevard, on the north by Keeney street, on the west by the alley west of Judson avenue, and on the east by the alley east of Forest avenue. It includes the property on each side of Judson and Forest avenues, on the north side of South boulevard and on the south side of Keeney street. The district is about 800 feet square. Its total street frontage in the territory is 4055 feet. Objections to the ordinance of 1929 were filed by the owners of 816 feet of frontage, or twenty per cent of the total frontage. The territory is about 216 feet north of Calvary cemetery, 500 feet east of the right of way of the Chicago and Northwestern railway and three blocks west of the lake. The district in question consists of fifty-six lots. A three-story apartment erected prior to 1921 occupies two of these lots. Thirty-four private dwellings occupy thirty-six lots. Ten of these dwellings have been erected since 1921 and eighteen lots are vacant. All of the appellants reside within the district. All of the houses in the district except two are occupied by their owners and only one house is for sale.

In 1921 the city passed a comprehensive zoning ordinance. The ordinance was passed after a zoning commission had made a complete study of conditions and had consulted with the public and with experts. Under this ordinance the city was divided into five use districts, designated as "A," "B," "C," "D" and "E." The "A" district includes single-family dwellings and other specified uses; the "B" district includes, among other things, tenement houses and hotels; the "C" district is the commercial district; the "D" district is the industrial district, and the "E" district is the unrestricted district. The city was divided into three height districts, designated as the thirty-five-foot, the forty-five-foot and the eighty-foot districts. Three area districts were established, known as "A," "B" and "C" area districts, regulating the intensity of the use of lot areas. This ordinance was held to be constitutional in *Deynzer* v. *City of Evanston*, 319 Ill. 226. Just prior to 1927 the entire matter of zoning was again carefully considered by the zoning commission, experts were employed, public meetings were held and a comprehensive study of conditions was made. By the amended ordinance of 1927 the classification of the district in question as "A" residence district was re-established. The ordinance of 1927, as amended, included apartment houses and apartment hotels in the "B" use district. This amendment changed the classification in certain other parts of the city but not in the neighborhood of the district in question. The property immediately adjoining the district in question on the east, south and west was classified in the 1927 amendment as "B" use district and forty-five-foot height district. A block to the west of the district in question was to be used for the erection of seven-story commercial buildings, and immediately west of this, abutting the railroad tracks, was a seven-story industrial district. Since 1921 the "B" use district south of Keeney street has been improved by eighteen apartment buildings, containing 422 apartments. Only one of these has been

erected since 1927. At the time of the trial one apartment building in the "B" district was under construction. There are twenty-nine vacant lots in the "B" district. There are a number of old buildings in the "B" district which, according to a witness for appellee, should be torn down and apartment buildings erected in their stead. The population of the city was about 37,000 in 1921 and about 70,000 in 1930. About 30,000 people live in apartments, 5000 live in apartment hotels and about 30,000 live in single-family residences.

In 1924 James A. Bidderman acquired eleven vacant lots on Forest avenue, in the district in question. In 1925 he filed a petition in the circuit court of Cook county for a *mandamus* attacking the validity of the zoning ordinance of 1921. These proceedings were subsequently dismissed. He now owns ten of the eighteen vacant lots in this district. In June, 1928, a petition to change the zoning in the district in question was presented to the zoning commission and denied. Another petition was presented in the fall of 1928 and denied, but upon re-consideration the commission granted the prayer of the petition. Two petitions were filed with the board of local improvements. One of them was for the widening of Judson avenue between South boulevard and Keeney street and the other was for the widening of Forest avenue between South boulevard and Keeney street. Attached to each petition was a memorandum reciting that the petitioners agreed that if the city council would pass an ordinance re-classifying the lots on these streets as a "C" height and area district the petitioners would consent to the institution of special assessment proceedings to widen and pave the streets. The property owners who signed these agreements include those who petitioned for a change of the zoning classification. The building commissioner and zoning enforcing officer of the city testified that probably one or more members of the zoning commission suggested to some of these petitioners that possibly if they would

agree to the widening and re-paving of the streets the commission would recommend that the petition to re-classify the property be granted.

The evidence as to the condition of the district in question for private residential purposes at the time the bill in this case was filed is conflicting, but it fairly tends to show that the land is moderately priced, the homes are modest but substantial, the neighbors are congenial, the houses and lawns are well kept, and many large, beautiful trees line the streets. Apartment buildings to the east and west are adjacent to the district in question; noises, dirt, soot and disagreeable odors come from these buildings; the streets and alleys are congested; new traffic and transportation lines have been established, and the houses on the south side of South boulevard have deteriorated in value.

The general zoning ordinance as passed in 1921 and amended in 1927 made no change in classification in this territory or in the land adjoining it. The amendment of 1927 was a re-enactment of the classifications of 1921. Since 1927 practically no change in the character of the territory south of Keeney street has been shown. Very little building has been done, either in the territory in question or the land adjoining. No reason is shown why this territory should be classed as "A" use, thirty-five-foot height district in 1927, and "B" use, forty-five-foot height district in 1929. Since the passage of the original ordinance in 1921 there have been no changes except those incidental to the growth of a rapidly growing city. Ten residences have been erected and eighteen lots remain vacant, ten of which are owned by one man. In the surrounding "B" use district sixteen apartments have been erected since 1921 and twenty-nine lots are vacant. One of the chief complaints of those living in the district in question is that the apartment buildings in the "B" territory are just across the alley from the "A" territory and the residents are annoyed by the dirt, smoke and noise from these apartment houses. This

is not a substantial objection. The very nature of the zoning ordinance requires that certain desirable neighborhoods adjoin others less desirable. (*Minkus* v. *Pond,* 326 Ill. 467.) No showing has been made why the vacant and poorly-improved land in the "B" use district cannot be used for apartment houses before it is necessary to encroach on the "A" territory. At the rate at which apartment buildings have been erected in the "B" territory south of Keeney street since 1921 there are enough vacant lots to take care of the growth for many years. Appellants, at the time they bought their homes, had a right to rely upon the classification of the property in question which then existed and upon the rule of law that the classification would not be changed unless the change was required for the public good. The evidence does not show a sufficient change to warrant these amendments of the zoning ordinance.

Appellee insists that the fact that a majority of the property owners in and adjoining the district in question want the change is proof of the changing condition of the territory. The power to amend is not arbitrary. It can not be exercised merely because certain individuals want it done or think it ought to be done. The change must be necessary for the public good.

Appellee contends that the zoning commission was in error in the classifications of 1921 and 1927, and that the purpose of the statute is to enable the amendment of zoning classifications not only to take care of re-adjustments called for by the changing character of neighborhoods, but also to remedy particular errors or hardships. The evidence does not show that the zoning commission and the city council were in error in the original classification. The action of the zoning commission in recommending the amendment in the fall of 1928 after having denied a similar petition earlier in the same year might be attributed to the fact that certain property owners agreed to the widening and paving of the streets provided the re-classification was made. These

agreements not only fail to show that the amendments to the ordinance were passed for the public good but they tend to show that they were passed in deference to the wishes of certain individuals. The ordinance of 1929 cannot be sustained under the law and the evidence, and the decree is erroneous in not so finding.

The decree is reversed and the cause is remanded for further proceedings consistent with this opinion.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded.*