**CLIFTON HILLS REALTY CO v
CINCINNATI (city) et**

Ohio Appeals, 1st Dist, Hamilton Co

No 5383. Decided March 28, 1938

322

Joseph H. Hoodin, Cincinnati, and Walter K. Sibbald, Cincinnati, for appellant.

John D. Ellis, Cincinnati, Edward F. Alexander, Cincinnati, Leslie, Hermann & Ritchie, Cincinnati, Wm. S. Schwartz, Cincinnati, Victor Heintz, Cincinnati, Ralph Kreimer, Cincinnati, for appellees.

## OPINION

By MATTHEWS, J.

The Court of Common Pleas of Hamilton County having sustained a general demurrer to the plaintiff's amended petition, and the plaintiff not desiring to plead further, judgment was rendered against it.

This is an appeal on questions of law from that judgment.

The plaintiff-appellant seeks a declaratory judgment that a zoning ordinance of the city of Cincinnati is unconstitutional.

The defendants are the City of Cincinnati, Cliff M. Stegner, Commissioner of Buildings, the Clifton Development Company, a corporation, Ring Construction Company, The New York Life Insurance Company and Gustav Ring.

In the amended petition, the plaintiff recited in considerable detail the history of the origin of zoning in the City of Cincinnati, commencing with the general survey in 1923, followed by the adoption of the City Planning Commission of an official city plan, designed to provide for the orderly development of the city for the following fifty years. This plan was made official by a comprehensive zoning ordinance passed by the city council, effective on May 3rd, 1924, and in that connection a zone map was adopted dividing the territory within the city limits into districts designated as "Residence A", "Residence B" and "Residence C" districts, in addition to districts dedicated to industrial and business purposes.

In the amended petition it is alleged that:

"In the preparation of said zoning ordinance and the said Zone Map a detailed survey was made of the property now owned by the plaintiff and of the property now owned by the defendant, the Clifton Development Company, together with all other property surrounding it as a result of which said City Planning Commission and its consulting engineers reached the conclusion that the development in the neighborhood should be residential and that the property afforded opportunity for the expansion of the open detached home district. The property of the plaintiff and the property of the defendant, The Clifton Development Company, hereinafter referred to, together with a large area to the east and south thereof, in said official City Plan and in said comprehensive zoning ordinance were thereupon zoned in a Residence "B" district. The conditions which caused said property to be so zoned have not changed in the interim except that the property to the southeast and the east of the property of said defendant in a large measure has been built up as an open detached residence district."

The plaintiff and defendant acquired their properties consisting of about 30 acres and 40 acres respectively, in 1927, and at that time both properties were zoned as "Residence B" properties. The plaintiff still owns a part of this property. The defendant still owns all the land acquired by it.

When the plaintiff acquired its property it was undeveloped. Thereafter, and while both properties were still zoned as "Residence B" properties the plaintiff subdivided its land into approximately sixty-five lots, laid out and built streets and sold many lots under a general plan restricting their use to single family residences. It and its grantees have expended more than one million dollars in developing the property.

The land of the defendant "the Clifton Development Company", is wholly undeveloped.

On December 21st, 1932, the council of the city of Cincinnati enacted §1311 providing that:

Sec 1311 Residence 'B' District Use Regulations. In the residence 'B' District the following uses only are permitted:

1. Uses permitted and as regulated in Residence 'A' Districts.
2. Two family dwellings.
3. Multiple dwellings designed for and occupied by not more than four (4) families
* * *
10. Accessory buildings, built with or after the construction of the principal building, including one (1) private garage and uses customarily incident to any of the above uses when located on the same lot and not involving the conduct of any business. Garage space may be provided for four (4) self-propelled vehicles or trailers on any lot. Such space may be increased, provided that the area of the lot shall contain not less than twelve hundred (1200) square feet for each vehicle or trailer stored. Only one (1) commercial vehicle not exceeding one and one-half (1½) tons capacity may be stored on any lot and space for not more than one (1) vehicle may be rented to persons not occupants of the premises."

and repealed the "Residence B" use regulations theretofore in effect. Following this amendment, numerous persons relying upon plaintiff's restrictions and the districting by the city of the properties of the plaintiff and the defendant, the Clifton Development Company purchased lots from the plaintiff and erected residences thereon.

Then it is alleged that early in 1936 the defendants, Ring Construction Company, The New York Life Insurance Company and the Federal Housing Administration conceived the idea of having the Ring Construction Company purchase the land of the Clifton Development Company and erecting thereon ninety-two apartment houses of the unit type, each unit to be so constructed as to accommodate eight or more families and also a two story public garage to house 280 automobiles, where they or other automobiles would be washed, serviced, and provided with fuel and oil, and, that said defendants the City of Cincinnati, Cliff M. Stegner, Commissioner of Buildings, and the City Manager, and other appointive officials of the City of Cincinnati having agreed to further said scheme, procured the city council to pass on May 6, 1936, an ordinance amending the official zone plat or map, whereby the land of the Clifton Development Company was removed from "Residence B" district and placed in "Residence C" district. Inferentially, at least, it appears that multiple family houses are permitted in "Residence C" district, and is alleged that before this change there were sufficient "Residence C" districts provided on the original zone map to permit the erection of multiple family residences in excess of the demand therefor by the inhabitants of the city.

The plaintiff also alleges that to permit the defendants to carry out their intentions will cause a congestion of population in the area, i.e., about 840 families, will greatly increase traffic problems, overcrowd the schools, the erection of the public garage within 300 feet of plaintiff's property will destroy the privacy of its property, affect the health of the community, cause the spread of disease, cause noise and confusion in what is now a quiet, peaceful community, greatly lessen property values, and do great and irreparable damage to the plaintiff and to the numerous persons who have built homes in the plaintiff's subdivision.

The plaintiff also alleges that while the recital in the ordinance was that its passage would be for the best interests of the general public, council on passing the ordinance acted arbitrarily and solely to meet demands made upon it by those who contended that its passage was necessary to create work for certain persons alleged to be unemployed; and that said ordinance is unreasonable and not a proper exercise of the police power in that it denies equal protection and has no relation to the public health, safety and welfare of the restricted locality and the entire municipality.

The plaintiff further alleges that, after this action was instituted the defendant, Gustav Ring applied to the Commissioner of Buildings for permits to construct said buildings.

Now is plaintiff entitled to any relief on this statement of facts?

While there is no direct allegation that the defendants threaten to and will proceed with their plan, unless prevented by the intervention of the court, it is fairly inferable from the statements. And so the amended petition must be given a reasonable construction most favorable to the pleader upon this demurrer, that inference will be drawn.

The general demurrer raised the question of whether the amended petition stated a cause of action.

(1) At the threshold it is urged that the plaintiff has no capacity to maintain this action and particularly no right to sue as the representative of a class. As to the latter it does not seem material. The plaintiff alleges that it is a property owner, and that its property will be affected harmfully by the threatened use of the property by the Clifton Development Company. That being so, the right to maintain the action is in no wise dependent upon its representative character, now, assuming that the plaintiff has alleged improper or ultra vires conduct on the part of the city officials and threatened conduct by the other defendants under color of the authority thus conferred, to the plaintiff's damage, can plaintiff maintain an action to restrain the threatened conduct? This question is answered by the case of **Pritz v Messer, 112 Oh St 628**, which was an action by a property owner to restrain use of adjoining property in violation of the terms of the same original ordinance that is involved in the case at bar. The third paragraph of the syllabus to that case sufficiently states the ruling of the court on this point. It states:

"A property owner, residing in a municipality in which a valid zoning ordinance is in full force and effect, has legal capacity to apply for an injunction against the erection of an apartment building upon a lot contiguous to her real property, upon the ground that the proposed structure will violate the zoning ordinance."

(2) It is clear that in passing zoning ordinances a municipal council is engaged in legislating and not in contracting. The action lacks all the essential elements of a contract. No one is bound to the municipality as a result, and the municipality binds itself to no one thereby. In speaking of this phase of zoning legislation the Supreme Court of the United States in Reicholderfer v Quinn, 287 U. S. 315, 83 A.L.R. 1429, said:

It is enough to say that zoning regulations are not contracts by the government and may be modified by Congress."

We assume that the same rule for determining the extent of legislative power under the Constitution applies after as before the initial legislation on the subject.

(3) Zoning ordinances are an exercise of the so-called police power and the police power has been said to be synonmous with sovereign power, license cases, 5 How. (U S.) 504 at 582, Mutual Loan Co. v Martel. 222 U. S. 225. It is the power of government to enact all manner of laws in furtherance of the public safety, health, morals, general welfare and prosperity of the body politic.

It extends to every just object of government, but not beyond that. It does not extend to arbitrary, capricious and unreasonable action, ostensibly taken to promote the public safety, health, morals, general welfare or prosperity, but having no reasonable relation to any of those objects.

The original zoning ordinance involved in the case at bar was sustained because the court could not say that the professed purpose to promote the public safety, health, morals, general welfare and prosperity was unfounded and a pretense for the exercise of arbitrary power. Pritz v Messer, supra.

The constitutionality of every subsequent zoning ordinance must be determined by the same test. In Kennedy v City of Evanston, 348 Ill. 428, 181 NE 312, the court said:

"If a general zoning ordinance is passed and persons buy property in a certain district, they have a right to rely upon the rule of law that the classification made in the general ordinance will not be changed unless the change is required for the public good. Western Theological Seminary v City of Evanston, 325 Ill. 511, 165 NE 778; Phipps v City of Chicago, 339 Ill. 315, 171 NE 289. Where the amendment of a zoning ordinance is clearly an arbitrary and unreasonable action on the part of the city council and not authorized or contemplated by the zoning statute, it is of no force and effect. Michigan-Lake Building Corp. v Hamilton, 340 Ill. 284, 172 NE 710; Brown v Board of Appeals, 327 Ill. 644, 159 NE 25, 56 A.L.R. 242."

This result, not because the city may not repeal or amend the existing ordinance, but because in enacting the new legislation it must stay within constitutional limitations which exclude arbitrary and unreasonable action as lacking due process of law. As is said in Mondou v New York, N. H. & H. R Co., (223 U. S. 56), 38 L.R.A. (U. S.) 44 at 53, wherein the court quotes from Munn v Illinois, 94 U. S. 113, 134.

" 'A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will * * * of the legislature, unless prevented by constitutional limitations. Indeed the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to changes of time and circumstances'."

But, under our state and federal constitutions (the due process clauses) every person has a right to be protected in his personal and property rights against the arbitrary and unreasonable exertion of power by every governmental agency.

It is urged that the United States Supreme Court in Reichelderfer v Quinn, supra, decided that a property owner has no cause of action arising from a change in zoning. The court did hold in that case that the plaintiff under the circumstances in that case had no cause of action. But we do not understand that it was held that no relief could be granted against arbitrary and unreasonable action under the guise of zoning. To prevent misconstruction, the court ended its opinion in that case with this observation: "The record and briefs disclose no facts which require us to consider how far the exercise of the power to modify may be subject to constitutional limitations."

While property and property rights, or as Mr. Justice Cardozo has phrased it, "the bundle of privileges that make up property or ownership," exists solely by sanction of law—common or statutory—they cannot under our constitutions be withdrawn by ordinary legislative processes. These rights or privileges are conferred irrevocably, subject only to the qualification that to the extent necessary to promote the public safety, health, morals, general welfare, and general prosperity their use may be regulated. Within the ambit of that qualification, the beneficial enjoyment of the owner may be affected by restrictive legislation without compensation. As long as the thing itself is not inimical to the public welfare, the legal right to use and exclude cannot be withdrawn or repealed by the exercise of the uncompensating police power.

If the specific thing is not only not inimical to the public welfare, but on the contrary so compatible with it, that government itself desires it, government has the powers not merely to regulate but to take it upon making compensation.

While it is recited that the passage of the amendment is in the "general interests" that is not conclusive. It should be noted that the recital does not indicate an object within the police power, and even if it did the courts could not avoid the duty of determining for themselves whether the recital conformed to the facts. The allegations of the petition directly challenged the truth of the recital and also aver that the actual object was one not referrable to any condition of the property in the community, but a different object while coming within the power of government, is one the expense of discharging which should be met by taxation rather than by regulation of the use of property.

We find no disagreement with these principles in the opinion of the learned trial judge. However, he reached the conclusion that the allegations of arbitrariness and unreasonableness were mere legal conclusions without any substantial allegations of fact to support them. In that respect we think he erred. As will be seen from the summary of the allegations which we have made, the plaintiff has alleged in considerable detail facts contradicting any possible inference that this amendment was enacted to promote some object coming within the police power of the city, and, then the action is characterized as arbitrary and unreasonable. Upon demurrer, these allegations must be accepted as facts, and, if so, they disclose an invasion of the constitutional rights of the plaintiff. The statement of the trial court that good and sufficient reasons for this rezoning may well be imagined, might be justified by the evidence at the trial upon the facts, but is inadmissible upon demurrer in the presence of the positive allegations of fact in the amended petition.

In conclusion, it should be stated that we are aware of the rule that the judiciary cannot interfere with or control the functioning of a legislative body in the enactment or repeal of laws or ordinances, even though the legislative body is acting beyond its constitutional power (McChord v Louisville & Nashville Railroad Co., 183 U. S. 483) and also that a municipality performing delegated sovereign governmental powers is exempt from suit unless per-

mission is expressly granted. But it is a judicial function to interpret and apply the law when necessary to determine the rights of parties properly before the court.

What we hold is, that the amended petition shows a violation of the plaintiff's property rights on the part of the Clifton Development Company and the individual defendants resulting from the disregard of the provisions of the lawful ordinance in reliance upon the later ordinance, which is of no force and effect, if the allegations of the amended petition are true.

For these reasons, the judgment is reversed and the cause remanded to the Court of Common Pleas for further proceedings according to law.

ROSS, PJ, and HAMILTON, J, concur.

MEMORANDUM ON APPLICATION FOR REHEARING

Decided April 25, 1938

By MATTHEWS, J.

We have examined the application for rehearing and the grounds advanced in support of it. We find nothing advanced that was not considered at the original hearing, and have, therefore, concluded that a rehearing would not be helpful. As a result of our consideration of these grounds we make these additional observations:—

(1) The repeal of a statute may violate the "Due Process Clause" of our constitutions 12 Am. Jur. 356.

(2) In passing upon the sufficiency of the amended petition, the motives of counsel were not considered. The opinion makes it clear that its sufficiency was sustained only because of the allegations that the operation of the amending ordinance would be unreasonable and arbitrary, which, upon demurrer, must be construed most favorably to the pleader. The real object or motive in passing legislation is only of importance in determining whether an object coming within the police power will be subserved by the legislation.

(3) There is an express allegation in the amended petition that "the plaintiff and those persons who purchased lots from it have expended more than a million dollars" before the attempted rezoning, and that the change in the zoning would cause irreparable harm "to this plaintiff and to the numerous persons who have built their homes within plaintiff's said subdivision," which we consider a sufficient allegation of an injury to a vested property right.

(4) It is begging the question to assert that an ordinance cannot be enforced after its repeal as the question is as to the validity of the repeal. Nor does the decision holding invalid an attempt to repeal or modify a part of an ordinance do "disruptive violence" to the established doctrine that no council can bind its successors in office in legislative matters. The ground of invalidity is not that the subsequent council is bound by the action of the prior council, but that both are bound by the constitution.

It is said that this means that thousands of laws such as those restricting the practice of medicine to doctors, real estate dealing to realtors, undertaking to morticians, etc. "must be held eternally inviolate at the behest of any beneficiary of the special privileges unless council can show that there is a change of conditions—a mere determination that they should never have been passed would not be sufficient." We do not think this follows for many reasons. In the case at bar there was no legislative determination that the ordinance should never have been passed—just the contrary. A fair construction of the allegation of the amended petition is that the succeeding council recognized that the original zoning ordinance was a proper exercise of the police power, and that the conditions justifying its exercise had increased rather than diminished, and, notwithstanding, it proceeded to modify it by loosening the restrictions upon the use of the defendant's property, while retaining the restrictions upon the plaintiff's property to the plaintiff's property damage. The licensing of doctors, realtors, and morticians does not seem to have much application.

Hubbard v Oklahoma City,— Okla. —, 58 Pac. (2d) 547, relied upon by counsel for defendants, does not relate to a change of a comprehensive zoning ordinance, with its compensating correlative restrictions. There was a comprehensive zoning ordinance, but the new ordinance did not relate to any provision in that ordinance. The new ordinance changed another ordinance that related to the right to drill for oil. This is made clear by the case from which the court quoted—Keaton v Brown, 171 Okla. 38, 45 Pac. (2d) 109. Both opinions were written by the same judge. In Keaton v Brown, supra, at 111 he said:

"Protestant relies upon the doctrine announced in the case of Van Meter v Manicn, (Okla. Sup.) 38 P. (2d) 557. That case has no application to the issues presented here for the reason that the court was there dealing with a restrictive covenant in a piat and no issue relating to zoning was involved or considered. Protestant also cites the case of Michigan-Lake Building Corporation v Hamilton, 340 Ill. 284, 172 NE 710. wherein an amendment to a zoning ordinance was under consideration restricting buildings to 264 feet in height, so as to allow buildings 440 feet high on cnly four properties within a certain zoned district, and said amendment was held to be arbitrary, unreasonable, and unauthorized. In the case of Kennedy v City of Evanston. 348 Ill. 426, 181 NE 312, also cited by protestant, an ordinance permitting the construction of apartment houses in a Class A or residence district was held invalid. Neither of these cases are applicable to the facts in this case.

As we have heretofore pointed out, there was nothing in the original zoning ordinance which prohibited or attempted to regulate drilling for oil and gas in any zone. The ordinance creating the U-7 or oil drilling zone did not, therefore, operate to decrease or increase the restrictions theretofore existing by virtue of any previous zoning ordinance. The power to regulate the drilling for oil and gas, while it was in existence at the time the zoning ordinances were passed, had not been exercised. Therefore, no vested rights of protestant were affected by the enactment of the oil drilling ordinances."

(5) Counsel refers us to the opinion rendered by the Court of Appeals of the District of Columbia in Reichelderfer v Quinn, 30 Fed. (2d) 749, which, it is claimed, shows that a zoning ordinance was relied on in that case, which is the same case that was passed upon by the Supreme Court of the United States in 287 U. S. 315. That part of the opinion of the Supreme Court of the United States which we quoted, shows that a zoning ordinance was relied on, but the quotation, also shows that there was no constitutional detect in the ordinance authorizing the fire-engine house. Manifestly, the establishment of a unit of a fire department is a valid exercise of the police power.

(6) In the brief of the city of Cincinnati it is said: "In a nutshell, the question here is whether the plaintiff shall amend his petition so that specific allegations can be met with specific denials" etc. That is not the question as we view it. The trial court sustained a general demurrer and entered final judgment. If this judgment is sustained, no amendment is possible. If the defendants had or should attack the petition for indefiniteness, the question of amending it would be presented. But on a general demurrer, no such question arises. The allegations, indefinite though they be. must be given a reasonable construction most favorable to the pleader.

(7) While this is an action for a declaratory judgment it is in all essentials an action for an injunction. In Nashville C. & St. L. Ry. v Wallace, 288 U. S. 249, the court considered whether it could review a judgment entered under the Tennessee Uniform Declaratory Judgment Act, declaring the state excise tax on gasoline applicable to an interstate carrier. The state court held that the tax so applied did not violate the "Commerce Clause" of the Federal Constitution. Whether the United States Supreme Court could review the judgment depended upon whether the proceeding was a "case or controversy" within the meaning of the Federal Constitution. In discussing the question, the court, at pages 262 and 263, said:

"Thus the narrow question presented for determination is whether the controversy before us, which would be justiciable in this court if presented in a suit for injunction is any the less so because through a modified procedure appellant has been permitted to present it in the state courts, without praying for an injunction or alleging that irreparable injury will result from the collection of the tax.

"While the ordinary course of judicial procedure results in a judgment requiring an award of process or execution to carry it into effect, such relief is not an indispensable adjunct to the exercise of the judicial function."

For these reasons, we adhere to the conclusions originally reached and the application for a rehearing is denied.

ROSS, PJ, and HAMILTON, J, concur.