OFFUTT ET AL. *v.* BOARD OF ZONING APPEALS
OF BALTIMORE COUNTY ET AL.

[No. 144, October Term. 1953.]

552

*Decided May 25, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*James C. L. Anderson*, with whom were *Nicholas G. Penniman, III, Frank H. Newell, 3rd*, and *James Y. Offutt, Jr.*, on the brief, for the appellants.

*W. Lee Harrison*, with whom were *Charles W. Held, Jr.*, and *Michael Paul Smith* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

The Circuit Court for Baltimore County affirmed an order of the Board of Zoning Appeals of Baltimore County reclassifying two tracts of land situated near Owings Mills from an "A" Residence Zone to an "F" Light Industrial Zone. Four protesting property owners brought this appeal from the Court's order.

The Zoning Regulations of Baltimore County, which were adopted by the County Commissioners on January 2, 1945, in pursuance of the authority delegated to them by the Baltimore County Zoning Enabling Act, Laws 1941, ch. 247, Laws 1943, ch. 877, divided the County into seven zones. These zones are: "A" (Cottage) Residence, "B" (Semi-detached) Residence, "C" (Apartment) Residence, "D" (Group) Residence, "E" Commercial, "F" Light Industrial, and "G" Heavy Industrial. *Oursler v. Board of Zoning Appeals of Baltimore County*, 204 Md. 397, 104 A. 2d 568.

The two tracts in question, which have been owned by Dr. and Mrs. James G. Saffell since 1944, are located on the west side of Reisterstown Road, a four-lane highway, about a quarter of a mile south of Owings Mills.

Painter's Mill Road divides the two tracts. The tract north of the road contains 26 acres. The tract south of the road contains 19 acres. According to Dr. Saffell, the north tract contains three acres of marshy land, and the south tract contains six acres of marshy land.

Dr. Saffell asserted that the tracts are not adaptable for residential development, not only because they are marshy, but also because a freight line of the Western Maryland Railroad runs along the west side of the tracts at an elevation of 10 or 12 feet above the grade of the tracts. Dr. Saffell further testified that he had farmed his property at a loss ever since he acquired it. When asked why he wanted the tracts rezoned, he said: "The land itself is too costly to maintain as farm land. I want to sell it to the best advantage."

Dr. Saffell and his wife contracted to sell the north tract to Gerotor May Corporation, and the south tract to Maryland Cup Company. They then made applications to the Zoning Commissioner of Baltimore County for reclassification of the tracts from residential to light industrial use. The Zoning Commissioner passed two orders, one on November 26, 1952, the other on December 11, 1952, granting reclassification.

The protesting property owners, Thomas W. Offutt, Benjamin Tongue, George B. P. Ward and Garrison Forest School, Inc., appealed from the orders of the Zoning Commissioner to the Board of Zoning Appeals. They made two objections to the reclassification. Their principal objection was that the proposed industrial plants would change the residential and agricultural character of the neighborhood and depreciate the values of their properties. Their further objection was that the plants would cause an increase in traffic on Reisterstown Road with resultant increase in traffic hazards.

The applicants for reclassification presented a petition, signed by about 600 residents of Baltimore County, urging the Zoning Board to grant the applications for rezoning to enable Gerotor May Corporation and Maryland Cup Company to locate on the tracts. The petition declared

that the establishment of the two industries "would be of tremendous advantage to our community, would create employment, would not adversely affect the health, safety, morals or general welfare of our community but would tend to improve same."

The Board took notice that there are commercial and industrial enterprises along Reisterstown Road at and near Owings Mills. Among these are the Park & Tilford Warehouse, formerly the Owings Mills Distillery, the Baltimore County Supply Company, and the Groff Coal Yard. The Board also took notice that there are commercial enterprises in the village of Garrison, which is about a half mile south of the Saffell farm. The Board further took into consideration the fact that during the nine years since the comprehensive plan of zoning was adopted by the County Commissioners, an electric transformer station had been installed on Dr. Saffell's land along Painter's Mill Road; a natural gas pumping and mixing station had been built on adjacent property to the north; four radio towers had been erected nearby; a large tract of land along the Western Maryland Railroad at Bonita Avenue, known as the Knatz property, had been reclassified from residential to light industrial; and oil storage tanks, an adhesive plant, an a lumber yard had been installed nearby. In view of these changes, the Board found that this locality is not exclusively a residential or agricultural neighborhood; that the two tracts were erroneously classified as "A" Residence; and that reclassification of the tracts for light industrial use would not be detrimental to the health, safety and general welfare of the community. Accordingly on April 30, 1953, the Board passed an order reclassifying the two tracts from "A" Residence Zone to "F" Light Industrial Zone, with the exception of the land adjacent to Reisterstown Road for a depth of 250 feet, which remains "A" Residence.

On May 28, 1953, the four protestants petitioned the Circuit Court for a writ of *certiorari*, alleging that the order of the Board was arbitrary and illegal. The pro-

testants complained that while the Board based its decision partly on the petition signed by hundreds of residents of the county urging reclassification, a great majority of the signers lived a number of miles from the tracts in question. The Court issued the writ, and authorized Dr. Saffell and his wife to intervene as parties defendant. The Court found that there was substantial evidence to support the Board's action, and that it was not arbitrary and illegal.

The protestants, appealing here from the Court's order affirming the action of the Board, contended: (1) that there was no mistake in the original zoning, and (2) that there was no evidence of substantial change in the conditions of the neighborhood.

It is universally recognized that zoning is not static. If it could not change with the changing conditions amid the complexities of the modern world, progress would be retarded. A restriction of property use which might be considered reasonable today could be so unreasonable under changed conditions as to amount to confiscation. Zoning officials have the power to alter zone lines from time to time when there are substantial changes in conditions and such alteration has a reasonable relation to the public welfare.

The County Commissioners of Baltimore County have been expressly authorized by the Legislature to vest in the Zoning Commissioner the power to amend, supplement or change from time to time the boundaries of the zoning districts, divisions or zones. Laws 1945, ch. 502, Baltimore County Code, 1948 Ed., sec. 366. The County Commissioners have vested this power in the Zoning Commissioner.

When an application is made for reclassification of a tract of land from one zone to another, there is a presumption that the zones established by the original zoning ordinance were well planned and arranged and were intended to be more or less permanent, subject to change only when there are genuine changes in conditions. Therefore, before a zoning board rezones a

property, there should be proof either that there was some mistake in the original zoning or that the character of the neighborhood had changed to such an extent that reclassification ought properly to be made. *Kracke v. Weinberg,* 197 Md. 339, 347, 79 A. 2d 387; *Wakefield v. Kraft,* 202 Md. 136, 96 A. 2d 27; *Zang & Sons, Builders, Inc. v. Taylor,* 203 Md. 628, 634-635, 102 A. 2d 723, 727.

In the instant case both the Board of Zoning Appeals and the Circuit Court were of the opinion that the County Commissioners had made a mistake in the original zoning of the tracts on January 2, 1945. There could, of course, be room for difference of opinion as to whether the County Commissioners did make a mistake at that time. In any event, there can be no doubt now, after the steady trend in this locality toward industrial use, that there was substantial evidence to support the action of the Board and the Circuit Court.

In the first place, it must be kept in mind that in determining the validity of a zoning restriction, the court may take into consideration the character of the neighborhood. It is proper to consider the fact that the tracts in question are near a railroad and property devoted to commercial and industrial uses. *Nectow v. City of Cambridge,* 277 U. S. 183, 48 S. Ct. 447, 72 L. Ed. 842.

In the second place, a number of persons who reside near the tracts in question felt that reclassification from residential to industrial use would not be detrimental to the welfare of the neighborhood.

Jacob Von Gunten, whose home is situated at Reisterstown, Dolfield and Tollgate Roads adjoining Dr. Saffell's property, testified that he believed the plants would not depreciate the value of his property, but on the contrary would increase its value. In explaining why he was in favor of the reclassification, Mr. Von Gunten said:

> "I am in favor of it because as I look down on this whole thing my property is located so that I see the Distillery, lumber yard, coal yard, and this gas station we have been hearing about. I see an Adhesive Plant and a Fire Department.

That is what I look at. I see the railroad, Rosewood with old buildings. With a clean plant like Black & Decker and other industrial places, this won't hurt the community."

Mrs. Cora Stewart Spayde, whose home at the intersection of Reisterstown Road and the freight line of the Western Maryland Railroad is only about 700 feet from Dr. Saffell's property, testified that her husband was the first person to donate money to fight the rezoning, but after they looked more carefully into the matter and learned of the high caliber of the two industrial companies, they withdrew their objection and advocated the reclassification.

Thirdly, the Court had the benefit of the experience of a number of real estate brokers, who went on record in favor of the reclassification.

John E. Esome, who has been engaged in the real estate business for 33 years, testified that the land at the intersection of Reisterstown Road and Painter's Mill Road is not suited for residential use, because the development of this land for residential purposes would be so expensive as to be practically prohibitive. "The chief reasons," he said, "are because of the topography of the land being below the Reisterstown Road and Painter's Mill Road, and the drainage problems that would be involved. * * * The railroad rises above the land. * * * In my opinion it would be putting all the houses in a pocket."

John A. Magee, who has been a real estate broker for 35 years, and has been an instructor in real estate and appraising at the Johns Hopkins University, gave the following reasons why the two tracts are most suitable for commercial or light industrial uses:

"The reasons for that are because the industry —light industry and industry in general—requires good transportation, which is afforded by transportation on Reisterstown Road. Rail is very desirable; to some industries it is essential. This property possesses both of these

requirements. It is a level piece of land, which lends itself well to the construction of industrial plants, because there is very little grading required. Particularly there is an abundance of electric power available right at this plant, gas and water are also available, so that it has all the utilities that are required and good transportation, all of which are particularly important in an industrial location.

"Another particularly good requirement is its proximity to labor and the availability of raw material. The proximity of the land, with the use of the automobile, is no longer necessary to locate industrial plants in densely populated districts, because the automobile enables its labor to reach its place of employment. Where there is good transportation in the form of wide thoroughfares, there is also public transportation available, which is an important consideration. For these reasons it is my opinion this is a very excellent site for a light industrial plant."

Fourthly, the Board and the Court had the benefit of a study of land uses in Baltimore County which had been made by the Baltimore County Planning Commission with the object of finding desirable sites for industries. The function of the Planning Commission is to make a study not only of public projects, such as schools, highways, and water supplies, but also of private projects, residential, commercial and industrial, looking to the physical development and future growth of Baltimore County. Malcolm H. Dill, Director of the Commission, testified that during the Commission's survey he visited Owings Mills and its environs, and found that the land located on Reisterstown Road, an arterial highway, and on a line of the Western Maryland Railroad, has excellent transportation facilities. He stated that although the study was not formally approved by the Commission at that time, he and his staff had recommended the suitability of the land for industrial use.

The protestants called this reclassification "spot zoning." In *Cassel v. City of Baltimore*, 195 Md. 348, 355, 73 A. 2d 486, we stated that a "spot zoning" ordinance which singles out a parcel of land within the limits of a use district and marks it off into a separate district for the benefit of the owner, thereby permitting a use of that parcel inconsistent with the use permitted in the rest of the district, is invalid if it is not in accordance with the comprehensive zoning plan and is merely for private gain. But a reclassification can be considered as "spot zoning" only when it fails to bear a substantial relationship to the public health, safety, morals and general welfare, and is out of harmony and in conflict with the comprehensive zoning ordinance.

A striking illustration of "spot zoning" can be seen in *Linden Methodist Episcopal Church v. City of Linden*, 113 N. J. L. 188, 173 A. 593. In that case an amendment to a zoning ordinance transferred from a residential zone to a business zone a lot surrounded by the residence zone and within 100 feet of a church, to enable a saloon to be opened there. It was held by the Supreme Court of New Jersey that the amendment was void as an unreasonable exercise of municipal power.

That case is entirely different from the case before us. Here a number of circumstances justify a change of classification from residential to light industrial use. It is significant that advocates of reclassification reside very near the tracts in question. On the contrary, the Garrison Forest School, one of the protestants, is more than a quarter of a mile away, and Mr. Offutt, also a protestant, stated that his home is nearly a mile away. We acknowledge that a property owner has the right to rely upon the rule of law that a classification made by an ordinance will not be changed unless the change is required for the public good. *Clifton Hills Realty Co. v. City of Cincinnati*, 60 Ohio App. 443, 21 N. E. 2d 993; *Kennedy v. City of Evanston*, 348 Ill. 426, 181 N. E. 312; *Page v. City of Portland*, 178 Ore. 632, 165 P. 2d 280. However, property owners have no vested rights in

consequence of the enactment of a zoning ordinance establishing use districts. No contractual relations are created thereby. Property is held subject to the valid exercise of the police power of the State.

We cannot disregard the general rule that in an appeal from a decision of a zoning board, the court will not substitute its own judgment as to the wisdom or soundness of action taken by the board, but will decide only whether or not such action was arbitrary or discriminatory and illegal. It is not the function of the court either to zone or to rezone, but only to decide whether the board properly applied the applicable law to the facts. The court should not substitute its own judgment for the judgment of the board if the question decided is fairly debatable. If there is room for reasonable debate as to whether the facts justified the board in deciding the need for its action, the decision must be upheld. It is only where there is no room for reasonable debate, or where the record is devoid of supporting facts, that the court is justified in declaring the legislative action of the board arbitrary or discriminatory. *Northwest Merchants Terminal v. O'Rourke*, 191 Md. 171, 60 A. 2d 743; *Kracke v. Weinberg*, 197 Md. 339, 79 A. 2d 387; *Wakefield v. Kraft*, 202 Md. 136, 96 A. 2d 27; *American Oil Co. v. Miller*, 204 Md. 32, 102 A. 2d 727.

Finally, we pass to the second objection of the protestants that the proposed plants would increase traffic hazards on Reisterstown Road. They stressed the testimony of Captain Carl E. Zinkham, of the County Police Department, that Reisterstown Road is one of the heaviest traveled highways in Maryland. Captain Zinkham acknowledged, however, that it is not as heavily traveled as York Road, Belair Road and Pulaski Highway. He also agreed that any increase in traffic hazards that might be caused by the establishment of the two plants could be reduced by a merging lane at the intersection of Painter's Mill Road.

Any apprehensions about traffic congestion were allayed by Joseph D. Thompson, who has been a highway

engineer and traffic expert for thirty years. Mr. Thompson, who served as Roads Engineer for Baltimore County, testified that Reisterstown Road could carry twice the volume of traffic it is carrying now. He did not think there would be any hazard caused at the intersection of Painter's Mill Road by automobiles going to and from the proposed plants; but he suggested that in case there should be an unusually heavy increase in traffic at that intersection, traffic hazards there could be minimized by the installation of a traffic light.

We do not think the evidence warrants us in setting aside the order of the Court below affirming the order of the Board of Zoning Appeals.

*Order affirmed, with costs.*