(Nos. 20057, 20058, 20059.—

THE MICHIGAN-LAKE BUILDING CORPORATION, Appellee, *vs.* EVA H. HAMILTON *et al.*—(JOHN F. CUNEO, Appellant.)—HARRY C. EDMONDS *et al.* Appellees, *vs.* EVA H. HAMILTON *et al.*—(JOHN F. CUNEO, Appellant.)— THE JOHN CRERAR LIBRARY, Appellee, *vs.* THE BOARD OF APPEALS OF THE CITY OF CHICAGO *et al.*—(JOHN F. CUNEO, Appellant.)

*Opinion filed June 20, 1930—Rehearing denied October 10, 1930.*

DUNCAN, J., dissenting.

CAMPBELL & FISCHER, BARNET HODES, and SONNEN-SCHEIN, BERKSON, LAUTMANN & LEVINSON, (JOHN G. CAMPBELL, CARLTON L. FISCHER, DAVID LEVINSON, and I. E. FERGUSON, of counsel,) for appellant.

KIRKLAND, FLEMING, GREEN & MARTIN, SCOTT, BAN-CROFT, MARTIN & MACLEISH, and WILSON, McILVAINE, HALE & TEMPLETON, (JOSEPH B. FLEMING, LESTER L. FALK, JOSEPH H. PLECK, CLAY JUDSON, and GEORGE FIED-LER, of counsel,) for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

On July 8, 1929, the commissioner of buildings of the city of Chicago granted to John F. Cuneo a permit to erect at the northeast corner of Michigan avenue and Randolph street a sixty-story office building, to be constructed of steel, concrete, terra cotta and brick in accordance with certain plans submitted therefor. The building as designed was to be 440 feet high at the street line, with a tower thereon hav-

ing a further height of 193 feet. It was to occupy a frontage of about 89 feet on Michigan avenue and approximately 69 feet on Randolph street. Three separate appeals from the decision of the commissioner of buildings were taken to the board of appeals under the zoning ordinance of the city of Chicago. One of the parties appealing was the Michigan-Lake Building Corporation, which owns improved property on the west side of Michigan avenue in the block immediately north of Randolph street; another party appealing was the John Crerar Library, which owns a building directly across Michigan avenue from the Cuneo site, and the third party appealing was H. C. Edmonds, trustee, who owns property on the east side of Michigan avenue and in the same block as the Cuneo property. The appeals were heard as one case by the board of appeals and the decision of the building commissioner was affirmed. Separate writs of *certiorari* were sued out of the circuit court of Cook county and the cases were consolidated for hearing. The circuit court on December 10, 1929, reversed the decision of the board of appeals and revoked the building permit issued to Cuneo. The latter prayed and perfected an appeal from that judgment, and the trial judge certified the validity of a municipal ordinance was involved and the public interest required that the appeal be taken direct to this court. By order of this court the cases, designated here as Nos. 20057, 20058 and 20059, have been consolidated and will be disposed of in one opinion.

The city council of the city of Chicago, under authority of the statute on zoning, created a zoning commission, which made an exhaustive study and careful survey in furtherance of the problem of zoning the entire city of Chicago. The matter was under consideration for about two years. Among the important questions and problems considered and determined at that time was the height and bulk of buildings. Many meetings were held with numerous organizations and associations and several hearings had before

the commission made its report and recommendations to the city council. As a result of the work of the zoning commission and persons interested a comprehensive zoning ordinance was passed by the city council during April, 1923, whereby the city was divided into four kinds of use areas or districts, namely, residence, apartment, commercial and manufacturing, and into five volume districts, in each of which districts the height and bulk of buildings to be constructed on lots therein and the use of lot areas are limited and regulated. Under that ordinance the property involved in this litigation was zoned for commercial use and as fifth volume district. Sections 20 and 21 of the 1923 zoning ordinance contain the provisions concerning the limitations applicable to property in the fifth volume district. Prior to the amendment of June 14, 1929, which is the part of the ordinance here involved, sections 20 and 21 of the ordinance provided, in substance, that a building in the fifth volume district, which comprises most of the "loop" and down-town business property in Chicago, could be constructed having a maximum street line height of 264 feet, plus an allowance of 16 feet in height for a sloping roof and plus the allowance for a superstructure or tower, which could not occupy more than twenty-five per cent of the area of the lot or exceed in volume one-sixth of the volume of the main building permitted on the premises. During May, 1929, an amendment to the 1923 zoning ordinance was introduced in the city council and referred to its committee on buildings and zoning. The important part of the amendment was as follows:

"Section 21, paragraph (e), sub-paragraph 1. The street line height limit in a fifth volume district shall be increased 66⅔ per cent of such height limit on all frontages of premises three (3) sides of which adjoin streets, one of which sides abuts a street greater in width than 100 feet and one of which sides is across the street from a public park, public playground, public waterway or cemetery, it

being the intention of the provisions of this paragraph to increase the ultimate height limit of said described premises."

By this amendment the street line height limit in a fifth volume district was increased from 264 feet to 440 feet. On May 15, 1929, there was published in the *Chicago Evening Post* a notice of a hearing on the amendment of the zoning ordinance to be held by the zoning committee in the City Hall on June 3. The notice was printed and published in the first edition of the paper heretofore mentioned, which consisted of 6700 copies, and did not appear in the other editions of the paper on that day. A meeting of the committee was held pursuant to the published notice, at which several other ordinances providing for an amendment to the zoning ordinance were considered. The minutes of the committee on buildings and zoning recite that the committee recommended the passage of the ordinance "to permit increased heights of buildings in the fifth volume district on premises having frontage on three streets." The testimony of five members of the city council, who were also members of the zoning committee and were present at the committee meeting on June 3, appears in the record, and that testimony is to the effect that there was no discussion of or hearing pertaining to the amendment of the zoning ordinance increasing the height limit of buildings in the fifth volume district. The amendatory ordinance in question was passed by the city council on June 14, 1929. The vote thereon was forty-three yeas and no nays. It was published in the *Chicago Evening Post* June 28, 1929, and under authority of this amendment the application for a building permit, which application was dated June 27, 1929, was granted by the city building commissioner on July 8 following. The brief of appellees states that the amendatory ordinance here under consideration was subsequently repealed by the city council on October 17, 1929.

The judgment of the trial court, as disclosed by the record and briefs of counsel, was based upon the following

conclusions: That there being no measurements or definitions in the amendatory ordinance as to what constitutes a public park, public playground, public waterway or cemetery, it would be necessary for the city building commissioner and board of appeals to exercise some discretion when undertaking to determine whether or not one of the sides of a particular lot was across the street from a public park, playground, waterway or cemetery, and the ordinance is illegal as giving to them, as administrative officers, legislative powers; that the amendatory ordinance is invalid because in violation of the powers granted to the city council by section 1 of the statute known as the Zoning act; that the amending ordinance is invalid because it is inconsistent with the original comprehensive zoning ordinance of 1923, and permits arbitrary, inharmonious and preferred situations to be established and given special privileges, special freedom from maximum height and volume restrictions provided by the 1923 zoning ordinance without just cause, and which preferred situations or locations are, or will be, flagrantly inconsistent with the harmony and agreed necessities of the original 1923 zoning plan, modifying it at particular spots or locations without general or systematic adjustment; that the amendment included properties not so different in situation from others or sufficient in number to constitute a class; that the ordinance is unreasonable as to classification and is an arbitrary or irrational exercise of power having no substantial relation to the public welfare, and constitutes giving a special, arbitrary and unreasonable privilege without just cause, contrary to the provisions of the fourteenth amendment to the Federal constitution.

Appellant contends, in substance, that the court erred in its several conclusions as to the validity of the amendatory ordinance, and further asserts that the court had no jurisdiction, under a writ of *certiorari* to review the decision of the board of appeals, to pass upon the constitutionality of the ordinance, particularly in view of the fact that there

was no showing or finding that by the enforcement of the ordinance appellees would suffer special injury or damage. Appellant also asserts that the judgment of the trial court deprives him of his property without due process of law.

The briefs filed by respective counsel are indeed exhaustive and appellees set forth various reasons why the judgment should be sustained, among which are various constitutional objections to the ordinance; that the amendment was not justified by the zoning statute; that the notice relative to the hearing on the amendment, and the hearing thereof, were not in accordance with the statute, and that the building commissioner and board of appeals erroneously assumed that the amendatory ordinance increased the volume limit as well as the height limit of buildings on certain sites. In the view we take of the case it will be unnecessary to discuss at length all of the points presented by counsel. We shall first consider the question of the trial court's jurisdiction to pass upon the validity and constitutionality of the amendatory ordinance.

Section 3 of the Zoning act (Smith's Stat. 1929, chap. 24, p. 365,) provides that all ordinances passed under the act shall be enforced by such officer of the city, village or incorporated town as may be designated by ordinance. The section also provides for the appointment of a board of appeals, whose duty it shall be to hear and decide appeals from and review any order, requirement, decision or determination made by an administrative official charged with the enforcement of any zoning ordinance. Upon the hearing before the board of appeals any party may appear in person or by agent or by attorney. The same section further provides: "Any person or persons, jointly, or severally aggrieved by any decision of the board of appeals, or any officer, department, board or bureau of the municipality, may present to a court of record a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. Such petition

must be presented to the court within thirty days after the filing of the decision in the office of the board. Upon the presentation of such petition, the court may allow a writ of *certiorari* directed to the board of appeals to review such decision of the board of appeals and shall prescribe therein the time within which a return thereto must be made and served upon the relator's attorney, which shall not be less than ten days and may be extended by the court. * * * If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take evidence or appoint a referee to take such evidence as it may direct and report the same to the court with his findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made. The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review."

In *Hughes* v. *Board of Appeals,* 325 Ill. 109, this court said: "In providing for the review of the order of a zoning board of appeals by means of a writ of *certiorari* the legislature saw fit to widen the field of review by the court so as to include not only questions of jurisdiction and regularity but also questions of fact, if the court should deem necessary for the proper disposition of the matter." Again, in *Park Ridge Fuel Co.* v. *City of Park Ridge,* 335 Ill. 509, the court, referring to the right to have a ruling made by a board of appeals reviewed by petition to the circuit court on *certiorari,* said: "Upon such review the court is given power to hear the entire matter *de novo,* or appoint a referee to hear it and report with findings of fact and conclusion of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made. The court may reverse or affirm wholly or partly, or may modify the decision brought up for review. The liberality of review is a departure from that allowed by common law proceedings on *certiorari* to administrative boards." In

*Brown* v. *Board of Appeals,* 327 Ill. 644, a review of the decision of the superintendent of buildings of the city of Springfield relative to issuing a building permit was taken to the board of appeals. The order of the board of appeals was reviewed on *certiorari* by the circuit court of Sangamon county and an appeal prosecuted to this court from the judgment of the circuit court. This court stated in the opinion that the question involved in the case concerned the validity of a certain amendment to section 19 of the zoning ordinance of the city of Springfield, and the amendment was held to be invalid. The validity of a zoning statute was also involved on *certiorari* proceedings in *Minkus* v. *Pond,* 326 Ill. 467. See, also, *Phelps* v. *Board of Appeals,* 325 Ill. 625.

The Zoning act authorizes a municipality to exercise what might be said to be extraordinary supervision over, and to place unusual restrictions or limitations upon, the property of its citizens by virtue of the police power. There is no valid reason or policy to which our attention has been directed for not permitting courts, under *certiorari* proceedings, to decide the validity or constitutionality of a zoning ordinance, which is the sole authority under which the zoning board of appeals has rendered its decision. Appellees here are the owners of property located in the same neighborhood as the property of appellant, but they are not permitted under the amendatory ordinance to construct, as appellant is, a building having a street line height of 440 feet. In our opinion appellees were aggrieved parties within the meaning of the zoning statute, and were authorized, in accordance with its provisions, to question the validity of the building permit issued to appellant and to attack the validity of the amendatory ordinance by virtue of which the permit was issued. *Ayer* v. *Cram,* 136 N. E. (Mass.) 338.

Section 1 of the Zoning act (Smith's Stat. 1929, p. 364,) is as follows: "In addition to existing powers, and to the end that adequate light, pure air and safety from fire and

other dangers may be secured, that the taxable value of land and buildings throughout the city, village or incorporated town, may be conserved, that congestion in the public streets may be lessened or avoided, and that the public health, safety, comfort, morals and welfare may otherwise be promoted, the city council in each city, and the president and board of trustees in each village and incorporated town shall have the following powers: To regulate and limit the height and bulk of buildings hereafter to be erected; to regulate and limit the intensity of the use of lot areas, and to regulate and determine the area of open spaces, within and surrounding such buildings; to classify, regulate and restrict the location of trades and industries and the location of buildings designed for specified industrial, business, residential and other uses; to divide the entire city, village or incorporated town into districts of such number, shape, area and of such different classes (according to use of land and buildings, height and bulk of buildings, intensity of the use of lot area, area of open spaces, or other classification) as may be deemed best suited to carry out the purposes of this act; to fix standards to which buildings or structures shall conform therein; to prohibit uses, buildings or structures incompatible with the character of such districts respectively; and to prevent additions to and alteration or remodeling of existing buildings or structures in such a way as to avoid the restrictions and limitations lawfully imposed hereunder. In all ordinances passed under the authority of this act, due allowance shall be made for existing conditions, the conservation of property values, the direction of building development to the best advantage of the entire city, village or incorporated town, and the uses to which property is devoted at the time of the enactment of any such ordinance. The powers by this act given shall not be exercised so as to deprive the owner of any existing property of its use or maintenance for the purpose to which it is then lawfully devoted."

Section 4 of the same act (Smith's Stat. 1929, p. 366,) provides for the making of amendments to a zoning ordinance, and is as follows: "The regulations imposed and the districts created under the authority of this act may be amended from time to time by ordinance after the ordinance establishing same has gone into effect, but no such amendments shall be made without a hearing before some commission or committee designated by such council or board of trustees. At least fifteen days' notice of the time and place of such hearing shall be published in an official paper or a paper of general circulation in such municipality. In case of written protest against any proposed amendment, signed and acknowledged by the owners of twenty per cent of the frontage proposed to be altered, or by the owners of twenty per cent of the frontage immediately adjoining or across an alley therefrom, or by the owners of twenty per cent of the frontage directly opposite the frontage proposed to be altered as to such regulations or district, filed with the clerk of the city, village or incorporated town, such amendment shall not be passed except by the favorable vote of two-thirds of all of the members of the city council in cities or of the members of the board of trustees in villages or incorporated towns."

The foregoing sections of the Zoning statute disclose the additional powers given to municipalities for the regulation, supervision and control of property generally and of buildings and their occupancy, as well as providing for such changes in any established regulations as may from time to time be found necessary. The statute, we think, contemplates the same careful, serious and intelligent consideration of an amendment to a zoning ordinance as is required in the preparation and enactment of an original ordinance on zoning. Some of the necessary requirements in the consideration and enactment of a zoning ordinance are, that due allowance shall be made for existing conditions, for the conservation of property values, for the direction of

building development to the best advantage of the entire city, and for the uses to which property is devoted at the time of the enactment of the ordinance. Among the many witnesses who testified on the hearings were several real estate men of recognized ability and experience in the handling, appraisal and valuation of "loop" or down-town business property in Chicago. No useful purpose would be served in setting forth this testimony in detail. The substance of it was that between the years 1893 and 1923 the ordinance street height limit of buildings in the city of Chicago changed and fluctuated to some extent from 130 feet to 264 feet; that during a part of that period, at least, there was some difficulty in the building developments and activities in the down-town business district; that the passage of the ordinance of 1923 establishing a street line height limit of 264 feet in the fifth volume district stabilized real estate values and rentals in that volume district, thereby making it possible to finance and develop business buildings with the knowledge on the part of both owners and bankers or financial agents that such buildings could be rented and administered on a fair return on the invested capital; that since the ordinance of 1923 was passed, between sixty and seventy business buildings had been constructed under its height and volume provisions and regulations and at a cost of more than three hundred million dollars; that there was no reason or necessity for increasing the street line height limit in the fifth volume district, because no new conditions had arisen calling for a change in the recently established height limit; that the effect of the amendatory ordinance would be to disturb the taxable values of land and property in the down-town business district, would unsettle values and building conditions and developments therein, and that buildings erected under it to a 440-foot street line height would have a prejudicial effect upon and a large differential renting advantage over surrounding or other business property which is limited and restricted to a street line height

of 264 feet. Though the trial court did not hold the amendatory ordinance invalid as permitting a building which might interfere with adequate light, pure air and safety from fire, or might increase the congestion in the streets at the busy site involved, or might injuriously affect the public' health, safety, comfort, morals and welfare, yet there was no evidence produced which established that any of these conditions would be improved or benefited by the construction of such a building as was authorized by the amendment.

As previously stated, we have nothing before us except the record showing that the city council committee on zoning recommended the passage of the amendatory ordinance. If there was an actual hearing at the time set therefor, or even a discussion of the amendatory ordinance or its provisions, either by this committee or thereafter by the city council itself, no one apparently knows anything about what was said. We cannot resist saying that it is indeed strange that an ordinance making as radical changes in the height and volume of business buildings in the fifth volume district of a large city like Chicago received such meager attention or consideration at the time of the hearing thereon and prior to its passage by the city council. Having in mind the provisions of the Zoning act previously quoted, we are much impressed with the language used by the trial judge in his decision. He stated: "If some change had been made after the lapse of six years that was reasonable, the courts in all probability would not feel justified in overriding the judgment of the city council in such a matter of administrative policy; but when, however, as shown by the evidence, the change which was made was actually so radical and revolutionary as to shock the reason of those most familiar with and having the completest knowledge of the normal necessities and requirements and conditions of building in the fifth volume district, and when, as shown by the evidence, the amendment would permit buildings of such a height and volume as would in an economic way greatly

disturb and render precarious vast property interests in the fifth volume district and without reason flout the statutory command of conservation of property values, it then becomes the duty of the court to halt the action of the city council and to hold the amendment invalid as in violation of the statute. The values of buildings put up within the last six years may not legally be unreasonably impaired by a sudden sweeping change made by the city council under the guise of zoning. That would not be 'the conservation of property values' but *ex post facto* confiscation of property rights without compensation. Although no mind is acute and comprehensive and prophetic enough accurately and with certainty to appraise to-day the ultimate and total effect of such a radical change in the law from a maximum of 264 to 440 feet, and although there is no *a priori* test or rule for the determination of an ideal height and volume, the conclusion from all the evidence seems quite irresistible that the amendment in question must be condemned and held to be in violation of the Zoning statute."

Undoubtedly, under section 4 of the Zoning statute, proper and necessary amendments to an original zoning ordinance are authorized. It is primarily the province of the municipality to which the zoning function is committed, to draw the line of demarcation as to the use and purpose to which property shall be assigned or placed, and it is neither the province nor duty of courts to interfere with the discretion with which such bodies are invested, in the absence of a clear showing of an abuse of that discretion. (*Minkus* v. *Pond, supra.*) Where the conclusion or action of a city council is fairly debatable, a court will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining the question. (*Zahn* v. *Board of Public Works*, 274 U. S. 325.) However, in the instant case there appears to have been no consideration given or allowance made for existing conditions, for the conservation of property values, or for the

direction of building development to the best advantage of the entire city. There is not a word in the record pertaining to the necessity of the amendatory ordinance or to its benefit to the public welfare in any manner. We are of opinion that the passage of the amendment under present conditions was clearly an arbitrary and unreasonable action on the part of the city council and not authorized by or contemplated under the Zoning statute. *Brown* v. *Board of Appeals, supra.*

The record shows there are in the fifth volume district but four pieces of property as now owned and located which will be affected under the construction of the amendatory ordinance—that the street over 100 feet wide cannot be the one between the proposed building site and the public park, playground, waterway or cemetery. Three of the four locations affected are already improved with large, substantial and modern structures. It is not the purpose of the Zoning act to permit special privileges to any one or to a few property owners. In the many adjudicated cases wherein zoning statutes or ordinances have been approved, the courts have stated, in substance, that zoning necessarily involves a consideration of the municipality or community as a whole and a comprehensive view of its needs. Any regulation or restriction placed upon property by virtue of the police power granted under a zoning statute must be impartially applied as to all properties similarly situated. The few properties here affected under the amendatory ordinance are not so differently situated as regards surrounding open spaces, light, air, safety, congestion and other matters pertaining to the public welfare as to warrant establishing these properties as a class and give them freedom from restriction, whereby the street line height of buildings erected thereon might be 66⅔ per cent higher than that which all other properties in the same volume district might have.

In our opinion there is no merit in appellant's contention that denying him the right to erect a sixty-story build-

ing upon his property will deprive him of property without due process of law. He and his property are under the provisions and regulations of the original 1923 zoning ordinance of the city of Chicago and its lawful amendments, which have been the guiding hand in the construction of all other business buildings in the fifth volume district.

We are of opinion the judgment of the trial court in revoking the building permit issued to Cuneo was correct, and the judgment will therefore be affirmed.

*Judgment affirmed.*

Mr. Justice Duncan, dissenting.