(No. 26541.—

KAZIMIERZ ZADWORNY *et al.*, Appellants, *vs.* THE CITY OF CHICAGO *et al.*, Appellees.

*Opinion filed September 21, 1942—Rehearing denied Nov. 10, 1942.*

JOSEPH R. ORRICO, and JOSEPH B. GILBERT, for appellants.

SHEEHAN & EGAN, SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, PRITZKER & PRITZKER, and BARNET HODES, Corporation Counsel, (DAVID LEVINSON, ROY J. EGAN, STANFORD CLINTON, JAMES A. VELDE, and LEO V. ROEDER,) for appellees.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Appellants, owners of certain apartment buildings on the north side of Melrose street, between North Central avenue on the east and Major avenue on the west, in the city of Chicago, filed a complaint in the circuit court of Cook county attacking the validity of an ordinance of August 2, 1935, amending the comprehensive zoning ordinance of 1923, by changing the property use within the bounds described in the complaint from apartment use to commercial use. They seek also to enjoin the building of stores and the like, alleged to be in prospect, because not permitted by the original zoning ordinance. On hearing a decree was entered dismissing the complaint for want of equity. The court certified that the validity of a municipal ordinance was involved, and that the public interest requires a direct appeal to this court.

Melrose street and Belmont avenue extend east and west. Central and Major avenues extend north and south. The tract involved lies in the rectangle formed by these roadways. The entire area so bounded is approximately 700 feet east and west by 265 feet north and south. That part abutting the north side of Belmont avenue and that part abutting the west side of North Central avenue, each to the depth of 125 feet, was, by the original comprehensive zoning ordinance, zoned for commercial use. The balance of this tract and all of the lots along the north side of Melrose street opposite it were by that ordinance zoned for apartment use.

The complaint alleges that in reliance upon the zoning ordinance of 1923 the tract abutting the north side of Melrose street, now owned by appellants, was improved by eleven apartment houses at a total cost of $226,000. It appears that seven of the eight appellants purchased their interest in such apartment buildings subsequent to the passing of the amendatory ordinance of 1935 changing the tract across

the street from apartment use to commercial use. The complaint charges that this tract of land, until 1941, remained vacant and unimproved, when building permits were issued to build store buildings. Prior to that time, and after the amendment of 1935, a permit was issued to build a theatre. Excavations were made but no building was erected.

The charge is that the effect of the amendatory ordinance of August 2, 1935, is to unreasonably depreciate the value of appellants' property and to constitute a taking of their property without due process of law. The ordinance is for this reason declared to be an unreasonable exercise of the police power given to the city of Chicago, and is therefore unconstitutional.

Material allegations of the complaint are denied by the city of Chicago. Other defendants set up also, as a defense, that shortly after the date of the amendatory ordinance a permit was issued for the erection of a theatre building on the tract rezoned; that excavations were made that were visible to all who passed along Melrose street; that this condition of the tract so remained until February, 1941, when building permits were issued and a large amount of money expended in the matter of building the theatre and other buildings prior to the complaint or notice thereof. It is also alleged in defense that title to the land embraced within the amendatory ordinance was secured in reliance on that ordinance and that, no legal action having been taken by any of appellants for a period of more than five years, they are guilty of *laches*.

Appellants say here that Melrose street is a residential area and is entitled to protection from encroachment by business so that it may maintain its past and intended character as a residential street; that their properties were erected in reliance on the original zoning ordinance of 1923 and that appellants have rights which they are entitled to enjoy unless it is shown to be for the public good that a

change be made in the ordinance. They say also that the defense of *laches* does not apply where the charge affects the constitutionality of the ordinance, since lapse of time cannot legalize an unconstitutional enactment.

The pivotal question involved is whether the amendatory ordinance is open to the objection that it violates private rights guaranteed under the constitution. The rule often recognized by this and other courts is that constitutional guaranties of private rights are subject to the qualification that they may be cut down by governmental agencies acting under a proper exercise of the police power of the State. This is the basis of the holdings that have sustained zoning ordinances. (*City of Chicago* v. *Rogers Park Water Co.* 214 Ill. 212; *Rothschild* v. *Hussey,* 364 id. 557; *Koos* v. *Saunders,* 349 id. 442; *Forbes* v. *Hubbard,* 348 id. 166; *City of Aurora* v. *Burns,* 319 id. 84.) It is also consistently held by this and other courts that the judgments of the legislative department, to which the authority to enact zoning ordinances has been granted, will not be disturbed merely because the court, if it were establishing zoning districts, would not have established them as did the legislative body. The rule is that when the question of reasonableness is fairly debatable, courts will not interfere with the legislative judgment. (*Forbes* v. *Hubbard, supra; Michigan-Lake Building Corp.* v. *Hamilton,* 340 Ill. 284; *Zahn* v. *Board of Public Works,* 274 U. S. 325, 71 L. ed. 1074.) It is the corollary of this rule, however, that the power to interfere by zoning regulations with general property rights, by restricting the kind and use of property, is not unlimited, and such restrictions cannot be imposed if they do not bear some substantial relation to the public health, safety, morals or public welfare. *Forbes* v. *Hubbard, supra; Bjork* v. *Safford,* 333 Ill. 355; *City of Aurora* v. *Burns, supra; Village of Euclid* v. *Ambler Realty Co.* 272 U. S. 365, 71 L. ed. 303.

Individual rights in the ownership of property were not created by the constitution but existed before its adoption and are guaranteed by it, and such rights are to be subordinated to the exercise of the police power only when and to the extent that such exercise of the police power bears substantial relation to the promotion of public health, safety, morals or general welfare. In determining whether an ordinance complies with or violates this standard, consideration is to be given to all the facts and circumstances shown. *Forbes* v. *Hubbard, supra.*

An ordinance enacted in the exercise of power conferred upon a municipality enjoys a presumption in favor of its validity, and it is incumbent upon one attacking it as unreasonable and oppressive to show affirmatively and clearly that such charge is true. *Evanston Best & Co., Inc.* v. *Goodman,* 369 Ill. 207; *Village of Western Springs* v. *Bernhagen,* 326 id. 100; *People ex rel. Keller* v. *Village of Oak Park,* 266 id. 365; *Standard Oil Co.* v. *City of Danville,* 199 id. 50.

The facts as shown in this case are that at the time the original zoning ordinance of 1923 was enacted none of the property in this area had been improved. It had been platted, only. The tract involved in this suit and the lots lying immediately north of it, where appellants' apartment houses now stand, were all vacant plots of ground. No guide, indicating what the character or direction of the growth of the city in that area would be, was available. Subsequent to the enactment of the general ordinance of 1923, and before the amendment of 1935, the lots on the north side of West Melrose street opposite the tract here involved were, as we have stated, improved by the erection of apartment houses. The north half of that street was paved by the owners of the lots along that side of it. From 1923 to 1935 the only improvement on the involved tract was the erection of a store building at the corner of Cen-

tral avenue and Belmont avenue, and one at the corner of
Central avenue and Melrose street.

The question involved here in considering the amenda-
tory ordinance of 1935 is whether the city council of the
city of Chicago, upon whom the power to pass zoning ordi-
nances is conferred by statute, exercised discretion within
constitutional limitations in enacting it. The law of prop-
erty gives free use of it, generally, to its owner. Restric-
tions put upon it by legislation must, as we have seen, be
based on the public good. The amendatory ordinance of
1935 was, in a sense, not a restriction of the general ordi-
nance of 1923 but a letting down of such restrictions in it.
Thus the appellants complain not so much of unreasonable
restrictions in the ordinance as an unreasonable relaxation
or lowering of the restrictions or limitations of the 1923
ordinance, by reason of which lowering of the use per-
mitted, they are injured.

The city had complete power to pass the amendatory
ordinance unless the rights of appellants, who purchased
apartments built under the original ordinance, entitle them
to restrain such legislative action. Whether they may do
so depends upon whether the action of the city council in
affecting their property values by the amendatory ordi-
nance, which, it is conceded, does affect those values, was
exercising its discretion within the scope held to be a proper
application of the police power. Appellants insist that the
amendatory ordinance is void because it was not made in
consideration of a change required for the public good.
What is the public good as it relates to zoning ordinances
affecting the use of property is, primarily, a matter lying
within the discretion and determination of the municipal
body to which the power and function of zoning is com-
mitted, and, unless an abuse of this discretion has been
clearly shown, it is not the province of the courts to inter-
fere. *Morgan* v. *City of Chicago,* 370 Ill. 347; *Speroni* v.

*Board of Appeals,* 368 id. 568; *Michigan-Lake Building Corp.* v. *Hamilton, supra; Minkus* v. *Pond,* 326 Ill. 467.

In the view of the facts shown in this record, that this tract has for years been largely undeveloped and the only buildings upon it were constructed for commercial use, the question whether the amendatory ordinance of 1935 was an unreasonable exercise of police power is one fairly debatable, and this court will not in such a case substitute its judgment for that of the legislative body primarily charged with the duty and responsibility of solving the matter. (*Forbes* v. *Hubbard, supra; Zahn* v. *Board of Public Works, supra; Minkus* v. *Pond, supra.*) There is no charge of fraud, concealment nor a lack of opportunity to be heard. Each legislative agency has in turn sustained the reasonableness of this ordinance, and we are of the opinion that the chancellor did not err in denying the relief prayed for. The decree is therefore affirmed.

*Decree affirmed.*