(No. 28062.—

THE PEOPLE *ex rel.* Donald T. Miller *et al.,* Appellants, *vs.* JOHN A. GILL *et al.,* Appellees.

*Opinion filed January 17, 1945—Rehearing denied ·March 15, 1945.*

RAYMOND L. JONES, of Chicago, for appellants.

L. MORELL GROSS, EDWIN A. HALLIGAN, and SAMUEL M. LANOFF, all of Chicago, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

Donald T. Miller, Robert Kolar, and F. J. Gerlich, as relators, filed a petition for writ of *mandamus* in the circuit court of Cook county against appellees, John A. Gill, building commissioner of the village of Brookfield, Philip Maher, a builder and architect, and the president of the board of trustees of the village of Brookfield, for the purpose of nullifying an amended zoning ordinance, and, also, simultaneously filed in the same proceeding a complaint in

equity, adopting substantially all of the allegations in the *mandamus* suit, and praying an injunction against Maher's constructing and building an apartment on property brought within the amended ordinance. Both the petition for *mandamus* and complaint in equity alleged the amended ordinance was void and that the effect of the change in the ordinance was to confiscate the property of the relators and petitioners and to take their property without due process of law, in violation of section 2 of article II of the constitution of the State of Illinois and the fourteenth amendment to the constitution of the United States, and also in violation of section 13 of article II of the Illinois constitution, which prohibits the taking or damaging of private property for public use without just compensation. Answers were filed, evidence heard, and both the petition for *mandamus* and the complaint in equity dismissed. Appellants have prosecuted a direct appeal to this court.

The cause involves a zoning ordinance of the village of Brookfield in Cook county, and the particular part of the village designated as Hollywood. This portion involves that part of the village extending from the Chicago Zoological section to the south limits of the village, a block or more south of the Chicago, Burlington & Quincy railroad right of way. The railroad runs substantially east and west, and Brookfield avenue parallels the railroad right of way. The first street north of Brookfield avenue running east and west is Parkview avenue, and the west boundary of Hollywood is Salt Creek. The streets running north and south from the railroad, commencing at the west side, are Arden avenue, McCormick avenue, Rosemere avenue, Hollywood avenue and Woodside avenue. All of this part of Hollywood under the ordinance before amendment, except as pointed out later, was designated as "Zone A" for single family dwellings. All the abutting property along the north side of Brookfield avenue from Salt Creek to the east side of the village was zoned "B" for either apartment buildings or business buildings.

Since Brookfield avenue ran in a northeast and southwest direction the lots immediately adjoining the avenue and thus zoned for purposes other than residence were irregular in shape. In the block between Arden avenue and McCormick avenue there were four lots which were zoned "B." Lot 12, at the corner of McCormick avenue and Brookfield avenue at its west end, is approximately 250 feet wide. Lots 52, 53 and 54 face Brookfield avenue from the center of the block west, and all of them were designated as "Zone B," permitting the erection thereon of apartment buildings. Lot 55 immediately to the north of the three last mentioned lots and facing Arden avenue is also bounded on the east by lot 12, and lot 56 immediately to the north of lot 55 corners with lot 12.

Appellee Maher acquired title for the benefit of the Investment Building Corporation to all of lots 52, 53, 54, 55 and 56, for the purpose of erecting thereon an eighty-unit apartment building, and, since lots 55 and 56 were restricted to single family dwellings, application was made to the proper authorities of Brookfield to have lots 55 and 56 rezoned, so as to permit the erection of apartment buildings. Preliminary to action by the board of trustees of the village, Maher submitted the plans and blueprints for the proposed building to the building commissioner of Brookfield, and the latter had the building inspector analyze the plans and make a report, which was referred to the president of the board of trustees. This report was then referred to the planning commission for Brookfield, a body consisting of thirty-six members. A meeting of this board was held, to which the public was invited, in the early part of August, 1943, at which time the contemplated project was discussed. Another organization, known as the Hollywood Home Owners Association, sent out notices to attend a meeting, where the subject was again discussed.

After all these things had been done, the Investment Building Corporation made an application to the president and board of trustees of the village of Brookfield for the

rezoning of lots 55 and 56 from "Class A" to "Class B." The chairman of the zoning board published notice of a public hearing, fixing the time and place where the citizens would be given an opportunity to be heard concerning the proposed amendment. The meeting was held and well attended and the subject discussed, and it was there pointed out that if the apartment building was confined to lots 52, 53 and 54 it would be a congested three-story building without parking facilities, but that if the additional use of lots 55 and 56 were procured, the building would be spacious, with two- and three-story buildings, and with a large open courtyard containing a sunken garden and a large parking space in the rear of the east side of the building near lot 12.

The zoning board, after the adjournment of the meeting, voted unanimously to rezone these lots from "Class A" to "Class B," and a formal ordinance was recommended. In conformity with the recommendation on September 14, 1943, the board of trustees had a regular meeting of the board of the village of Brookfield, and the clerk presented a communication from the zoning board of appeals, in which it was recommended that lots 55 and 56 be rezoned from "Class A" to "Class B." Residents of Hollywood were present and the matter was discussed by both the residents and the board, and finally the recommendations were unanimously adopted by the board of trustees and the report to rezone these lots was unanimously adopted, and thereupon the zoning ordinance of 1929 was specifically amended so as to class lots 55 and 56 as "Class B" rather than make a mere variation, as originally recommended by the zoning board of appeals.

Later, on September 28, 1943, a formal application for a permit to construct an apartment building on lots 52 to 56, inclusive, in accordance with plans submitted, was granted. The building will be set back eighty feet from Brookfield avenue and twenty-five feet from Arden avenue. Parking

space for thirty-nine cars is provided, and the minimum number of rooms to the apartment building will be three and one-half and the maximum four and one-half. The rental has been fixed by the War Production Board, which has approved priorities. The Federal Housing Administration has guaranteed the building construction loan, and the total cost will be in excess of $350,000. Work was started September 30, 1943, after which, on October 8, 1943, the lawsuit in question was commenced.

The appellants, three in number, own property in lots 57, 58, 59 and 60 in the same block north, facing Arden avenue. They make two main contentions, one that the amended ordinance was not justified under the statute, and second, that it was unreasonable, arbitrary and for private interests, in violation of constitutional rights.

The statute (Ill. Rev. Stat. 1943, chap. 24, pars. 73-1 to 73-10) authorizes cities and villages to exercise special powers to enact zoning ordinances. This statute is a re-enactment, with slight changes, of prior statutes upon the subject. There are two sections contained in the statute which authorize a change to be made in zoning regulations or territory after the passage and approval of the general zoning ordinance. Section 4 (par. 73-4) provides that the regulations authorized by statute may provide that the board of appeals may determine and vary their application in harmony with their general purpose, where there are practical difficulties or particular hardship in the way of carrying out the strict letter of such regulations; and also provides for certain procedure to be made before variation may be authorized by ordinance. Section 8 (73-8) provides that regulations imposed and the districts created under the authority of this article may be amended from time to time by ordinance, after the ordinance establishing them has gone into effect; and then provides the procedure necessary to legally amend such ordinance. The principal distinction between what is permitted by section 4 and

section 8 of the act is that under the former the regulations may be varied, *viz.*, the type of structures changed that may be erected upon a designated part of the zoned territory, while section 8 provides that not only the regulations but the districts may be amended, from time to time, by ordinance.

In this case, appellants make the claim that the change in the use of lots 55 and 56 was by virtue of the authority contained in section 4 to bring about a variation, and that the finding of the zoning board that the application should be granted upon the ground of particular hardship was invalid, because the particular nature of the hardship was not designated or described in the findings of the zoning board. On the other hand, the appellees claim that the ordinance was a valid enactment under authority of both said sections, as section 8 included not only regulations imposed upon the property within the zoning district, but also the district itself. The zoning board found the applicant should be granted relief upon the ground of particular hardship in the way of carrying out the strict letter of the zoning ordinance, and that the change would not be detrimental to public welfare, safety or health, and then recommended that in the zoning ordinance a reclassification be allowed for lots 55 and 56, changing them from "Class A," residential, to "Class B," apartment, purposes.

It appears that all of the notices and hearings required by either section 4 or section 8 have been given, that the recommendations of the zoning board are unanimous, and that the adoption of the ordinance by the village was unanimous; and since the village board was authorized to grant the relief sought under authority of these sections, it would appear to be immaterial whether the relief was granted by merely changing the designation of the purpose for which lots 55 and 56 could be used, or by changing the district within which apartment houses might be built. As far as the decisions of this court are concerned, such

changes have been made whether they came under one section or the other. The case of *Morgan v. City of Chicago,* 370 Ill. 347, is an illustration of relief allowed under section 4, while *Zadworny v. City of Chicago,* 380 Ill. 470, authorized it under section 8.

Appellants' contention that the ordinance fails to comply with section 4 of the act because of the fact that no "particular hardship" is shown is not borne out by the evidence. It appears the village of Brookfield could use five hundred additional apartments or residences. The appellee Maher was willing to build an apartment that would take care of eighty families. The area restricted for the use of apartment houses in this district was irregular in shape, and of such a character that it would require considerably more height than if more ground space were provided, and would also be insufficient to allow for garage space or landscaping for the purpose of beautifying the premises and making the same more agreeable for habitation. The new ordinance would enable the appellee to comply with the requirements of the Federal Housing administration as to the number of families which may inhabit a given area of land.

The statute does not define "particular hardship," leaving its application in each instance to the proper authorities. Considering that the builder of the apartment house desires to rent its space and to comply with all city, State and government regulations, it can easily be seen that to construct an apartment building upon limited space might so reduce the size of the apartment as to render the project a poor business venture which, for the person in such business, may be designated as a "particular hardship." We find no error in the proceeding to enact the ordinance, nor any lack of power upon the part of the village to adopt it.

The principal contention of appellants, however, is that the action of the village was arbitrary and unreasonable, and bears no relation to public health, safety or welfare,

and that the village authorities, in amending the ordinance, violated appellants' constitutional rights. We have many times had occasion to pass upon zoning ordinances and their amendments or variations after adoption. Zoning ordinances have generally been upheld upon the theory that the constitutional guaranties of private rights are subject to the qualification that they may be cut down by government agencies acting under a proper exercise of the police power. (*Zadworny* v. *City of Chicago,* 380 Ill. 470; *Forbes* v. *Hubbard,* 348 Ill. 166.) We have also consistently held the judgment of the legislative department will not be disturbed merely because the court, if it were establishing zoning districts or making variations therein, would not have done the same thing the legislative body did. The rule is that when the question of reasonableness is fairly debatable courts will not interfere with the legislative judgment. *Avery* v. *Village of La Grange,* 381 Ill. 432; *Burkholder* v. *City of Sterling,* 381 Ill. 564; *Zadworny* v. *City of Chicago,* 380 Ill. 470.

The same rules apply with respect to the use and purpose to which property shall be assigned, and it is not the province or duty of the court to interfere with the discretion with which such bodies are vested, in the absence of a clear showing of the abuse of that discretion. (*Morgan* v. *City of Chicago,* 370 Ill. 347; *Minkus* v. *Pond,* 326 Ill. 467; *Speroni* v. *Board of Appeals,* 368 Ill. 568.) In this particular case, whether the action of the village board in passing the amended ordinance was an unreasonable, arbitrary or an unequal exercise of power was fairly debatable. The property in question was adjacent to the railroad track and to a playground, which rendered it less suitable for single family use. One of the lots in question was contiguous on two sides to "Class B" lots, and the other cornered with a "Class B" lot. There were shown to be a number of instances in which changes from single-dwelling to two-dwelling apartments had been made, apparently with-

out objection. The population of Brookfield had greatly increased and there was a demand for apartments. And there were other facts appearing in evidence which not only seem to rebut any theory that the plaintiff's property would be seriously damaged, but also show that the community would be greatly benefited.

Under the authorities above cited, the decision of this case depends primarily upon facts which have been passed upon by the several designated agencies, including official zoning bodies, and the trial court. There is no contention that there was fraud, prejudice or any lack of opportunity to be heard. These different agencies have all concurred in the same result, *viz.*, that the change in lots 55 and 56 should be authorized. The relief granted by the village board was in conformity with the zoning statute and did not deprive appellants of constitutional rights, and the circuit court, thus, did not err in refusing to issue a writ of *mandamus* and in dismissing the complaint for want of equity.

The decree and judgment of the circuit court of Cook county are affirmed.

*Decree and judgment affirmed.*