**DENMAN, Jr., et, Plaintiffs, v. CITY OF CINCINNATI and GLEN REALTY, INC., Defendants.**

Common Pleas Court, Hamilton County.

No. A-166082.   Decided November 6, 1958.

514

Louis J. Schneider, Jr., Cors, Hair, Hartsock & Schneider, for plaintiffs.

William A. McKenzie, Graydon, Head & Ritchey, for defendant Glen Realty Company.

Wallace M. Power, Asst. City Solicitor.

## OPINION

By LEIS, J.:

Plaintiffs herein seek the extraordinary equitable relief of an injunction to enjoin the defendant, City of Cincinnati, from issuing a building permit to the defendant, Glen Realty Company, and to enjoin defendant, Glen Realty Company, from proceeding with the construction of a housing project known as Glengate Terrace in the City of Cincinnati, Hamilton County, Ohio.

By agreement of counsel, subsequent to filing of the petition, the filing of the answers was accelerated and the case immediately set down for hearing on the merits.

The salient facts themselves are quite simple: The City of Cincinnati by virtue of City Ordinance Section 1311-3a permits row or garden type housing projects in Residence "B" Districts; defendant, Glen Realty Company, seeks to build such a project in Mapleleaf Heights Subdivision which is zoned Residence "B"; plaintiffs, property owners contiguous to and in the vicinity of the proposed project, object to its construction.

First, as to the capacity of the plaintiffs to bring this action. The Court believes that the proper parties plaintiff are in Court, and that the plaintiffs have the required community of interest essential to a class suit as enunciated in the cases of Smith v. Kroger, Sup't., 138 Oh St 508; Haggerty v. Squire, Sup't., 137 Oh St 207; Knotts v. City of Gallipolis, 100 Oh Ap 491. See also §§713.13, 2307.18, 2307.21 R. C., Michigan-Lake Bldg., Corp. v. Hamilton, 340 Ill. 284, 172 N. E. 710; Cassel v. Mayor and City Council of Baltimore. 195 Md. 348, 73 A. 2d. 486; Pritz v. Messer, 112 Oh St 628, paragraph 3 of syllabus.

Proceeding to the merits of the case, the Court finds that determination of this case resolves itself to three major points of dispute.

The first point of dispute concerns an 8 x 40 foot strip at the end of Glengate Lane. Glengate Lane, even if extended by defendants as proposed, would be the sole artery into the development. It is argued

that the acceptance of Mapleleaf Heights Subdivision, of which Glengate Lane is a part, by the City of Cincinnati in 1940 (Exhibit 5) was faulty in that the final eight feet of Glengate Lane was never completed and remains in sod today. Plaintiffs contend that this was a faulty street dedication inasmuch as the paving of the street did not comply with the subdivision plat as approved (Exhibit 3). On this point, witness Ray Wachendorf, Supervising Highway Engineer No. 4 of the City of Cincinnati, testified comprehensively on the reasons for stopping eight feet short of the line. (Record pp. 60-61.) The Court finds this to be a logical explanation and holds that the street dedication of Glengate Lane was valid.

The second area of dispute concerns the validity of the zoning ordinance itself, Ordinance 1311, more particularly Section 1311-3a. The Court understands the position of plaintiffs to be that Residence "B" is historically single unit dwellings; or, at the most, four unit apartment buildings, and that multiple dwellings violate the true spirit of Residence "B" Zone. Section 1311, as amended to include Section 1311-3a, allows multiple dwellings in Residence "B" District, providing certain requirements are met.

It must be stated that zoning ordinances are a valid exercise of the police power. Comprehensive zoning plans are now recognized as an important function of municipal government in the interest of the public welfare, safety, and health. A property owner in any municipality adopting a zoning plan has the constitutional right, however, not to be denied his property without due process of law by such legislative enactments. By what standards must a court judge the validity of a zoning ordinance? First, there is a presumption of the reasonableness, validity and constitutionality of ordinances which applies fully to zoning ordinances and amendments of zoning ordinances. See 8 McQuillin on Municipal Corporations, Section 25.295. Such a presumption can not prevail, however, in the face of showing unreasonableness or arbitrariness. As to the criteria used to measure reasonableness, see 7 A. L. R. (2d) 990 at 1001. The record discloses that some of the plaintiff property owners purchased their homes in the said Mapleleaf Heights Subdivision prior to the 1949 amendment to Ordinance 1311 allowing multiple units. (Record p. 26.) The 1949 amendment does not in and of itself deprive such property owners of their constitutional rights. The Supreme Court of Ohio has held that a property owner has no vested right in zoning as it is; that such zoning can be amended for the public good. **Curtiss v. Cleveland, 166 Oh St 509, 3 O. O. (2d) 1.** Were these amendatory provisions for the public good? It is established that the general scheme of zoning may be valid, yet when applied to particular property and a particular set of facts and circumstances may be so arbitrary and unreasonable as to result in a confiscation; and in such a situation, as applied to the disputed property, the ordinancce is void. Eleopoules v. City of Chicago, 3 Ill. (2) 247, 120 N. E. (2d) 555. A study of the record before the Court reveals that many of the property owners are opposed to the construction of multiple units at the end of Glengate Lane and assert through their counsel that the value of their

property would be depreciated and traffic problems would be increased. Fox v. City of Springfield, 10 Ill. 2d 198, 139 N. E. (2d) 732, holds that increased traffic congestion alone is insufficient to label the zoning legislation unreasonable. Robinson v. City of Los Angeles, 304 Pac. (2d) 814, holds that depreciation in value alone is not enough to declare it void. In ascertaining whether this amendment of the zoning ordinance is in the public interest, the Court must determine each case upon its particular facts. Eleopoulos v. City of Chicago, supra. Upon the record before it, this Court cannot hold as a matter of law that the amended zoning ordinance as it applies to the area in dispute is arbitrary and unreasonable. The decision as to the propriety of such matters lies not with the Courts but with the legislative bodies. In the absence of a clear showing of unreasonableness, this Court cannot substitute its judgment for that of the Council of the City of Cincinnati which enacted this measure in 1949. The remedy is in the citizens' hands to demand that the legislative products of their elected officials reflect the will of the people.

The third area of dispute concerns a 10 x 60 foot strip sandwiched between Glengate Lane and the proposed Glengate Terrace. The evidence discloses that Glengate Lane has a forty foot right-of-way paved to a width of twenty-four feet (Record p. 70); that in October 1957 Lewis Clark Thomson and Betty Bullock Thomson conveyed to the City of Cincinnati a 10 x 60 foot strip of land at the end of Glengate Lane (Record p. 52, Exhibit 6); that sometime thereafter the same grantors conveyed to defendant Glen Realty Company approximately six acres for the development of Glengate Terrace, said acreage being in part contiguous to the 10 x 60 foot strip conveyed to defendant City, and in part contiguous to the lots owned by plaintiffs, Joseph Doerr and Carol Sue Ross. Robert F. Hartmann, witness for City of Cincinnati, testified regarding this 10 x 60 foot strip and its significance to the area in dispute and to City of Cincinnati Ordinance Section 1311. (Record pp. 52-54).

Section 1311-3a referred to by the parties reads as follows:

"A group of two (2) or more multiple dwellings each designed for any number of families with private garages and parking compounds, may be erected in Residence "B," "C" and "D" Districts, but not in business or industrial districts, on a parcel of ground not less than fifty-thousand (50,000) square feet in area and in single ownership, and having not less than sixty (60) foot frontage on a public street paved to a width of at least sixteen (16) feet and improved with sewer and water mains, which frontage shall serve as the principal means of access to the property, notwithstanding the limitations of Section 1303-(2)(c), and provided further that they be so arranged as to minimum open spaces that the following detailed requirements for health and safety are complied with: * * *."

A study of the Ordinance in question indicates the pertinent parts of the Ordinance to be that a group of two or more multiple dwellings may be erected in a Residence "B" District on a parcel of ground that meets certain requirements.

1. The parcel must be 50,000 square feet or more.

2. The parcel must be in single ownership.

3. The parcel must have not less than 60 feet frontage on a public street which street is paved to a width of at least 16 feet and which street is improved with sewer and water mains.

4. The 60 foot frontage must serve as the principal means of access to the parcel.

These requirements refer not to the group of multiple dwellings but to the parcel of ground. The first and pertinent paragraph of Section 1311-3a is one extended sentence. The first thought in this sentence is that multiple dwellings may be erected in certain districts; the next thought is that the parcel of ground upon which these multiple dwellings are erected must meet certain requirements; the third thought in the sentence is that the multiple dwellings must meet space, health, and safety requirements delineated in subsequent sub-paragraphs. It is clear that a "parcel of ground" is referred to in the two clauses which immediately follow those keywords and which both begin with "not less than."

Applying the evidence in the instant case to the requirements of Section 1311-3a, we find that in regard to the parcel of ground upon which these multiple dwellings are proposed that the parcel has 50,000 square feet in area and in single ownership but that the parcel does not have sixty feet frontage on a public street paved to a width of sixteen feet. The Court is aware of the fact that a 10 x 60 foot strip was conveyed to the City to comply with this requirement; however, this Court, after careful consideration, is of the opinion that the October 1957 conveyance does not satisfy the requirement. This 10 x 60 foot strip was conveyed for street purposes. It is not a public street paved to sixteen feet. (See the answer of the defendant City, page 2, lines 4 and 5.) The Court believes that this Ordinance is designed to prevent such traffic bottle-necks as are likely here (record pp. 70-72), as the Ordinance states that this frontage shall serve as the principal means of access to the property. The word "access" connotes admission or entrance; hence, as here, entrance to property proposed to be developed. To interpret otherwise would mean that new and lengthy streets could be constructed to funnel into inadequate existing streets. Consider, then, such a situation at a time of need for fire apparatus.

The Ordinance as worded and punctuated can hold only this meaning. Upon the wisdom of this Ordinance, the Court does not comment; the Court interprets it as drawn. **State, ex rel. Jack v. Russell, 162 Oh St. 281.**

It is urged by the City, however, citing **Columbus Motor Express v. PUC, 126 Oh St 11,** that having the power to make this requirement, the City has the power to waive it. This may be true so long as no citizen is prejudiced by such a waiver. See Columbus Motor Express v. P. U. C., supra, at page 12, which states that:

"* * * it also had the power, in the exercise of its discretion, to waive the regulation **if the public interest was not thereby affected**." (Emphasis added.)

518

This Ordinance was enacted by duly elected councilmen of the City of Cincinnati; thus, the very citizens who elect these councilmen have a right to demand that the requirements of ordinances be complied with so long as the ordinance remains in effect. Having enacted the ordinance, the City is estopped to waive its requirements so long as the citizens of the municipality demand adherence to those requirements. We Americans like to pride ourselves on the fact that we have a government of laws, not men. If the law sets forth certain essentialities, it is not within the province of those who administer that law to bend its requirements at their will to the detriment of those citizens who have a right to rely on the stability of the law. (See State, ex rel. Sprigley v. Woodworth, 33 Oh Ap 406, par. 3 of Syllabus.) (From the record presented to the Court §713.11 R. C., would not apply.)

Upon the evidence presented, therefore, this Court must find that the requirements of City of Cincinnati Ordinance 1311-3a as it applies to multiple dwellings in Residence "B" Districts have not been complied with.

Accordingly, an injunction lies to enjoin further construction of multiple dwellings in the proposed area under the provisions of the present ordinance.

Please present your entry accordingly.