DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
The City of Macedonia ("City") appeals the Summit County Court of Common Pleas' reversal of the City of Macedonia Planning Commission's ("Planning Commission") decision to deny approval for Northfield Center Development Corporation's ("Northfield Center") proposed self-storage facility. We reverse and reinstate the Planning Commission's decision to deny.
Northfield Center, intending to construct a self-storage facility, negotiated a contract to purchase a piece of property located at 7944 South Bedford Road, Macedonia, Ohio ("Site"). The Site was zoned "LI-1," i.e., Light Industrial, which specifically allows for "storage." See Codified Ordinances of the City of Macedonia ("C.O.") 1169.03(b)(3). The purchase contract was contingent upon the Planning Commission's approval of Northfield Center's intended, conforming use.
As required by C.O. 1137.05, Northfield Center submitted an application to the Planning Commission for its approval of the self-storage facility. In this application, Northfield Center included a mandatory, yet incomplete plan of development ("Site Plan") outlining the preliminary structure and general design for the Site. After several months and numerous obligatory modifications to the Site Plan, The Planning Commission denied Northfield Center's application, finding that: 1) the Site Plan was still incomplete, and 2) there was no affirmative showing that the self-storage facility would not adversely impact the health, safety and general welfare of the community.
Northfield Center filed an administrative appeal in the Summit County Court of Common Pleas pursuant to Chapter 2506 of the Ohio Revised Code. It also filed a motion for the introduction of additional evidence pursuant to R.C. 2506.03. The trial court granted the motion, and the depositions of Fire Chief Timothy Black and Planning Commission members Anna Hejduk, Ken Martin and Mayor Joseph Migliorini, were submitted into evidence.
The trial court heard the administrative appeal and reversed the Planning Commission's denial, finding the record "void" of any substantive evidence to support the Planning Commission's decision. The City appeals.
 ASSIGNMENT OF ERROR
The trial court erred in reversing the decision of the Macedonia Planning Commission in failing to take into consideration the presumption of validity afforded the decision of the Planning Commission which was supported by a preponderance of reliable, probative and substantial evidence.
The City maintains that the Planning Commission, pursuant to the Codified Ordinances of the City of Macedonia, was legally entitled to deny approval of a Site Plan where it was their belief that the proposed conforming use would pose a threat to the health, safety and general welfare of the community. Northfield Center, however, claims that the Court of Common Pleas correctly reversed the Planning Commission's denial as no evidence supported such a proposition. We now turn to the primary issue of whether an adverse impact on surrounding properties and/or the health, safety and general welfare of the community may be determinative when a zoning board confers or denies a permit.
 I.
It is axiomatic that a municipality can lawfully restrict the use of land within its boundaries by reasonable, non-arbitrary and legislatively created zoning ordinances. See Euclid v. AmblerRealty (1926), 272 U.S. 365, 71 L.Ed. 303. The Planning Commission's authority is derived from the General Assembly, and is therefore limited to that specifically prescribed by the zoning ordinances. Bd. of Bainbridge Twp. Trustees v. Funtime, Inc.
(1990), 55 Ohio St.3d 106, 108. Thus, storage, a conforming use in the case sub judice, may not be denied merely because the proposed use is no longer desired. Where denial is on such a basis, the decision amounts to a rezoning without legislative action. See Gillespie v. Stow (1989), 65 Ohio App.3d 601, 607. However, this does not preclude restrictions for other purposes.
For over sixty years Ohio courts have held zoning ordinances to be a valid exercise of the police power where they have a substantial relation to public health, safety, morals and general welfare of the community. See State ex rel. Clifton Highland Co.v. City of Lakewood (1931), 41 Ohio App. 9, affirmed 124 Ohio St. 399. Indeed, even the Ohio Revised Code makes it clear that other restrictions and zoning classifications may be lawfully placed on land use. R.C. 713.10 states, in pertinent part, that:
 buildings and other structures may be classified * * * upon any other basis relevant to the promotion of the public safety, health, morals, convenience, prosperity, or welfare.
It is upon this legal foundation, that the City constructed its Site Plan requirement.
In the interests of health, safety and general welfare of the community and through its Zoning Ordinance, the City prohibits the issuance of a zoning permit, building permit or certificate of occupancy for the use or construction of any building in any zoning district until a Site Plan is approved by the Planning Commission. C.O. 1137.05(a), (b). In order to obtain the Planning Commission's approval, the Site Plan must include and show, among other things, the location and height of existing and proposed structures, accessory buildings and uses, adjacent streets, fences, walls, signs, lighting, sanitary sewers, water and other utilities, drainage provisions, dimensions of all buildings, set backs, parking drives and walkways, and a scaled drawing of four elevations including a front, rear and two side elevations together with additional views of cross sections, if necessary to indicate completely the exterior of the structure. See C.O. 1137.05(c)(1-13) (hereinafter "Site Plan Ordinance").
The Planning Commission then reviews the proposed Site Plan with input from the Zoning Inspector, the Fire Chief, the Law Director, the City Architect, and the City Engineer. The Zoning Ordinance provides that the Planning Commission shall determine if a proposed plan, i.e., a Site Plan, "either meets or does not meet the regulations, standards and purposes of these regulations, and shall approve or disapprove the plan * * *." C.O. 1137.05(d)(3). (Emphasis added.) Thus, only when the requirements of the Site Plan Ordinance are met, the Site Plan is complete, and the Planning Commission has approved it, can the construction or use begin.
However, Ohio courts allow exceptions to full and total compliance with zoning ordinances if the public interest is not affected. See Denman v. City of Cincinnati (1958), 80 Ohio Law Abs. 513. If the Site Plan requirements are not completely satisfied, the appropriate legislative body may enact an exception. In 1995, the City of Macedonia amended the Zoning Ordinance to include a "substantial compliance" exception to the strict mandates of the Site Plan Ordinance. The specific provision provides that:
If Planning Commission finds:
 That the proposed development substantially complies with all specific requirements and with the purposes, intent, and basic objectives of the applicable development regulations and standards;
 A. That through imaginative and skillful design in the arrangement of the buildings, open space, streets, access drives, and other architectural features, as disclosed by the application, the project shall result in a development of equivalent or higher quality than that which could be achieved through strict application of such standards and requirements, and
 B. That the proposed development shall have no adverse impact upon the surrounding properties or upon the health, safety or general welfare of the community, then the Commission may act upon the proposed application as if in compliance with the standards and requirements set forth in this Code.
C.O. 1137.05(d)(4) (hereinafter "Substantial Compliance Exception"). (Emphasis added.) This provision allows the Planning Commission to deny or accept the application when all of the elements of the Site Plan Ordinance are not met. Use of the Substantial Compliance Exception is purely within the Planning Commission's discretion, as the word "may" clearly indicates.
Accordingly, only if the Planning Commission finds: (1) that the Site Plan is in "substantial compliance" with the Code, (2) the "spirit" of the Site Plan is better served without strict compliance, and (3) both the Site Plan and proposed use do not adversely impact upon the surrounding properties or threaten the health, safety and general welfare of the community, may it vote to approve without total compliance. But, if the Planning Commission does not find that all the foregoing elements are met, including the affirmative finding that there shall be no adverse impact upon surrounding properties or upon the health, safety or general welfare of the community, then the Planning Commission cannot invoke the "substantial compliance" exception, and must deny the application pursuant to C.O. 1137.05(c).
In this case, Northfield Center failed to meet the basic requirements of the Site Plan Ordinance. Specifically, it never submitted a water drainage plan as required by C.O. 1137.05(c)(8-9). Therefore, the Planning Commission was faced with two options. It could either: (1) deny the application pursuant to Section 1137.05(c) because Northfield Center had failed to meet the Site Plan Ordinance requirements, or (2) consider the Substantial Compliance Exception, determine if all three elements were satisfied, and vote to approve or deny the application accordingly. We find, as evidenced in the record, that the Planning Commission, at its own discretion, undertook the latter alternative and appropriately considered the possible adverse impact on the surrounding area and the health, safety and general welfare of the citizens and residents of the City of Macedonia when reviewing Northfield Center's application.
 II.
Because the requirements of the Site Plan Ordinance were not satisfied, we must determine which party bears the burden of proof concerning the elements of the Substantial Compliance Exception.
Northfield Center suggests that the City bears the burden of proof to show that the Planning Commission's decision was supported by the preponderance of substantial, reliable and probative evidence. This argument is premature. Indeed, at the Planning Commission level, the burden of proof lies upon the applicant.
The burden of proof is a procedural matter within the measure of legislative control." See In re Joint County Ditch (1930),122 Ohio St. 226, 232. The language of the Substantial Compliance Exception suggests the applicant has the burden of convincing the Planning Commission that the Site Plan, although incomplete, does not have an adverse impact on the surrounding properties. The ordinance prescribes an affirmative finding of a negative, i.e.
the absence of a threat, and requires evidence that a self-storage facility does not present any adverse impact upon the health, safety and general welfare of the community. In such a case, and as the Ohio Supreme Court has found, the burden of proof is upon those supporting the negative of an issue in an administrative setting. Id. at 231.
Furthermore, in an administrative hearing, the placement of a duty upon a Planning Commission to research and unearth evidence would force the administrative body to conduct research and collect evidence it is not otherwise required to do by law. Such a finding would mean an applicant need only apply for the permit and then sit upon his hands. This course is illogical and unreasonable. A legislative body will not be presumed to have intended to enact laws producing unreasonable or absurd results.Canton v. Imperial Bowling Lanes, Inc. (1968), 16 Ohio St.2d 47, paragraph four of the syllabus; Featzka v. Millcraft Paper
(1980), 62 Ohio St.2d 245, 249.
Rather, an administrative board is a fact-finder. In an administrative proceeding, the duty to discover and uncover evidence should lie with the applicant. See, e.g, StaffilinoChevrolet, Inc. v. Ohio Motor Vehicle Dealers Bd. (May 12, 1994), Franklin App. No. 93APE11-1598, unreported, 1994 Ohio App. LEXIS 2006. Thus, the question before the Court of Common Pleas was whether Northfield Center sustained both its burden of production and persuasion.
In a zoning board appeal, the Court of Common Pleas performs a hybrid form of review. Univ. of Cincinnati v. Conrad (1980),63 Ohio St.2d 108, 111. The standard of review is not de novo,
although it is similar. Essroc Materials, Inc. v. Poland Twp. Bd.of Zoning Appeals (Jan. 22, 1997), Mahoning App. No. 96 CA 74, unreported, 1997 Ohio App. LEXIS 268, *16. The Court of Common Pleas must give consideration to the entire record and appraise all such evidence as to the credibility of the witnesses, the probative character of the evidence and the weight to be given it.Dudukovich v. Lorain Metro Hous. Auth. (1979), 58 Ohio St.2d 202,207; Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34; LibertySavings Bank v. Kettering (1995), 101 Ohio App.3d 446., 450. The court applies the law to that evidence presented to the administrative agency, but acts as a fact-finder in regard to any new evidence it is presented pursuant to R.C. 2506.03. Hebeler v.Colerain Twp. Bd. of Zoning, supra, at 186. The Court of Common Pleas is bound by the nature of administrative proceedings, and must presume the decision of the administrative agency is reasonable and valid. Community Concerned Citizens, Inc, v. UnionTwp. Bd. of Zoning Appeals (1993), 66 Ohio St.3d 452, 456. A common pleas judge may not blatantly substitute its judgment for that of the administrative agency. See Dudukovich v. Lorain MetroHous. Auth., supra. Instead, it may only reverse if it finds the "decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record." R.C.2506.04.
The standard for review for the Court of Appeals is more limited than that established for the Court of Common Pleas. A court of appeals' power is confined to questions of law, and it does not include the same extensive power as is granted to the common pleas court. Kisil v. Sandusky, supra, at 34. The record clearly indicates that Northfield Center failed to comply with all the requirements of the Site Plan Ordinance. Therefore, we must determine, as a matter of law, whether Northfield Center provided the quantum of evidence necessary where an affirmative finding that the proposed storage unit posed no adverse impact upon the health, safety and general welfare of the community is required.
 III.
As noted previously, the Planning Commission denied the application on grounds of an adverse impact on the health, safety and the general welfare of the community. In addition to the lack of a water drainage plan, the Planning Commission's concerns included the proximity of a nearby high school, possible loitering, and the lack of adequate security. The disapproving Planning Commission members clearly and repeatedly indicated their position as opposed to this land use development due to such reservations.
A review of the entire record indicates these concerns were not addressed by Northfield Center. The Court of Common Pleas found the record to lack any reliable, probative and substantial evidence. However, it failed to make the requisite, preliminary determination of who carried the burden of proof. By reversing the Planning Commission's decision without expressly assigning the burden of proof to Northfield Center, the Court of Common Pleas circuitously placed it on the City and erred as a matter of law. Indeed it was Northfield Center's responsibility to demonstrate, with reliable, probative and substantial evidence, the lack of a negative impact on the surrounding property. Accordingly, the presumption of validity and reasonableness enjoyed by an administrative agency's decision was not overcome.
The City of Macedonia's assignment of error is sustained. The judgment of the Court of Common Pleas is reversed and the decision of the Planning Commission is hereby reinstated.
Judgment reversed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellee.
Exceptions.
 _________________________________ LYNN C. SLABY, FOR THE COURT
BAIRD, J., CONCURS
DICKINSON, J., CONCURS IN JUDGMENT ONLY